## THE PAWNEE.

(District Court, E. D. Michigan, S. D. February 18, 1913.)

1. MASTER, AND SERVANT (§ 180*)—INJURIES—EMPLOYER'S LIABILITY ACT—APPLICABILITY TO VESSELS.

Employer's Liability Act June 11, 1906, c. 3073, 34 Stat. 232 (U. S. Comp. St. Supp. 1911, p. 1316), was not intended to apply to vessels generally, and in no event does it apply to a vessel under charter, which carried only such cargoes as the charterer might engage by private contract, and was therefore not a common carrier; and a seaman employed thereon, who was injured through the negligence of a fellow servant, and received the care and treatment to which he was entitled under the maritime law at the expense of the ship, cannot recover damages under such statute.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–361, 363–368; Dec. Dig. § 180.*]

2. MASTER AND SERVANT (§ 180*)—INJURIES—EMPLOYER'S LIABILITY ACT.

Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), is limited to common carriers by railroad, and does not apply to a vessel which is not part of or an extension of a railroad system.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–361, 363–368; Dec. Dig. § 180.*]

3. CARRIERS (§ 4*)—COMMON CARRIERS—WHO ARE.

A vessel under charter, which carried such cargoes as the charterer might engage by private contract, and making no profession to carry for all, and under no obligation to take whatever goods might be tendered, and running on no particular schedule of time, nor between any particular places or terminals, is not a common carrier, in the legal sense of the term, but in fact and in law a private carrier only.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1, 462–478; Dec. Dig. § 4.*]

In Admiralty. Suit by John Miller against the steamer Pawnee; Pawnee Boat Company, claimant. Decree dismissing libel.

Thomas L. Dalton, of Detroit, Mich., for libelant.

Fred L. Vandeveer, of Detroit, Mich. (F. H. & George L. Canfield and Hugh M. Edwards, all of Detroit, Mich., of counsel), for respondent.

TUTTLE, District Judge. This was a libel in rem against the steamer Pawnee, to recover damages for personal injuries which the libelant sustained, falling into the hold, through the alleged negligence of the mate, while working with him in placing strongbacks across a hatch, at Collingwood, Ontario, July 12, 1912.

The Pawnee, an American vessel, was then in the course of a voyage from Tonawanda to upper lake ports and return. She was under charter to a Tonawanda firm for the carriage of lumber and coal, covering all of her downtrips and a portion of her uptrips. On the balance of the uptrips she carried coal for other parties, as arranged by special contracts through her agents. The libelant had shipped, as an able seaman, at Detroit, for Tonawanda, on her pre-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vious voyage down, and then reshipped at Tonawanda for the voyage on which the accident occurred. His home was in Detroit.

[1] Immediately after the injury the master procured the services of a physician of Collingwood and cared for the libelant in accordance with his prescription. He continued on the ship, but was not required to do any work, and, as it was conceded, as well as shown by the proofs, received all requisite maintenance and care, including all wages, throughout the voyage, and until he left the ship at Port Huron, at his own request. He was also given a certificate for admission into the Marine Hospital at Detroit, where he received further attentions. It therefore clearly appeared that all the requirements of the maritime law in respect to a sailor injured in the service of the ship had been fully satisfied. The City of Alexandria (D. C.) 17 Fed. 390; The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; The Iroquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955; Benedict's Admiralty, § 194.

It was, however, contended on his behalf that the rule stated in these authorities has been superseded by the act of Congress of June 11, 1906, commonly styled the "Employer's Liability Act" (Act June 11, 1906, c. 3073, 34 Stat. 232 [U. S. Comp. St. Supp. 1911, p. 1316]), and it was argued that while, except for this particular act, the only relief to which he would have been entitled was the care, maintenance, and wages already received, and for which no claim was made, nevertheless, by virtue of this statute, the ship is liable for any injuries resulting from the carelessness of a fellow servant or other employé of the ship.

This statute was held unconstitutional in Howard v. Illinois Central Railroad, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297 (the "Employer's Liability Cases"), although, as subsequently determined in Railway Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. 106, it remains valid within the District of Columbia and the territories. This might suffice to show its inapplicability to the case at bar; but the court is satisfied, from the language of the act and the subsequent legislation which followed the Howard Case, that it was not the intention of Congress to include vessels in general within its provisions. The fact that the Howard Case was decided January 6, 1908, and that Congress immediately proceeded to enact the "Employer's Liability Act" of April 22, 1908 (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), is persuasive that this latter statute expresses the intention of Congress in regard to the subject-matter of both statutes, at least in respect to localities other than the District of Columbia and the territories.

[2] It is clear that the act of April 23, 1908, is limited to common carriers by railroad. Such are its express terms. Where a vessel is part of a railroad system, and its crew are employés of the railroad, it would seem as if this act might include maritime injuries. The Passaic (D. C.) 190 Fed. 644, 649. But the Pawnee was not a part of a railroad or railroad system, nor a common carrier. She was not engaged in the carrying trade for the general public, nor held out to carry the goods of all persons indifferently who might apply. She

carried only under special arrangements, for specific cargoes, with such parties as agreements might be made. She made no profession to carry for all, and was under no obligation to take whatever goods might be tendered. She ran on no particular schedule of time, nor between any particular places or termini. She selected such cargoes as she saw fit to carry and at such prices as might be agreed upon. She had the right to refuse any freight which she wished to reject.

[3] A ship in the business in which the Pawnee was engaged is not a common carrier in the legal sense of the term, but in fact and in law a private carrier only. Hughes' Admiralty, 149; Parsons' Shipping and Admiralty, 245; Sumner v. Caswell (D. C.) 20 Fed. 249; The Dan (D. C.) 40 Fed. 691.

This conclusion would exclude her from the operation of the statute of 1906, if for any reason the provisions of that law could be otherwise held to be in force under the circumstances of this case, and no recovery can be had thereunder. This disposes of the claim that the libelant is entitled to recover under the Employer's Liability Act.

A decree will be entered dismissing the libel.