[No. 12710. Department Two. September 13, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Frank Jarvis,* *Plaintiff,* v. FLOYD L. DAGGETT *et al., Respondents.*[1]

COURTS—ADMIRALTY JURISDICTION—STATUTES. The judiciary act of 1789 (U. S. Rev. St. § 563), "saving to suitors in all cases the right of a common law remedy where the common law is competent to give it" leaves open the common law jurisdiction of the state courts over torts committed at sea, making the .same concurrent with the admiralty and maritime jurisdiction extended to Federal courts by the Federal constitution, art. 3, § 2.

MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT—SCOPE— APPLICATION TO SEAMEN—OWNERS OF VESSELS. The state legislature could not, by the workmen's compensation act (3 Rem. & Bal. Code, § 6604-1 *et seq.*), declaring that the compensation provided for employees injured while engaged in extra-hazardous employments shall be exclusive of every other remedy and that all civil actions for such personal injuries are abolished, modify or abrogate the maritime law of the United States under which an injured seaman could pursue his remedy in admiralty; hence the workmen's compensation act was not intended to include seamen employed by companies operating boats upon Puget Sound engaged in intrastate commerce, and such companies are not subject to the provisions of the act or liable for the premium provided therein for "steamboats, tugs, ferries."

SAME. The extension of the workmen's compensation act (3 Rem. & Bal. Code, § 6604-1 *et seq.*) to seamen employed upon vessels engaged in intrastate commerce cannot be sustained on the theory that the state may legislate upon local matters embraced within Federal authority until such time as the Federal authority may be exercised by act of Congress; since U. S. Rev. Stat., § 4283, limits the liability of the owner of any vessel for damages or injury occurring without the privity or knowledge of such owner to the amount or value of the interest of the owner in such vessel and her freight, and applies to cases of personal injuries in which there is no privity or knowledge of the owner, thereby fixing a different limitation of such liability from that sought to be fixed by the workmen's compensation act, which limits liability of owners of vessels to the amount of their unpaid premiums.

Application filed in the supreme court March 26, 1915, for a writ of mandamus to compel the industrial insurance com-

[1]Reported in 151 Pac. 648.

mission to make demand for premiums as required by the workmen's compensation act.   Denied.

*Charles· H. Miller*, for plaintiff.

*The Attorney General* and *John M. Wilson, Assistant*, for respondents.

*J. S. Robinson, amicus curiae.*

MAIN, J.—This is an orginal application in this court for a writ of mandate to compel the members of the state industrial insurance commission to make a demand upon the Puget Sound Navigation Company and the Inland Navigation Company for the percentage of the pay rolls of these companies, in accordance with the schedule set out in the workmen's compensation act passed at the legislative session for the year 1911 (Laws of 1911, p. 345, ch. 74; 3 Rem. & Bal. Code, § 6604-1 *et seq.*).

The facts as stated in the petition and the affidavit in support thereof are, in substance, as follows:  On the 31st day of May, 1914, and for some time prior thereto, the Puget Sound Navigation Company and the Inland Navigation Company were foreign corporations with their principal place of business in this state, at Seattle.   These corporations were engaged in operating steamboats upon the waters of Puget Sound, within the state of Washington.   They were the owners of the steamship "Whatcom," engaged in carrying passengers and freight on Puget Sound for hire.

On or about the date mentioned, one Frank Jarvis was in the employ of the companies mentioned, working upon the steamship "Whatcom" as an oiler.   While engaged in this occupation, Jarvis sustained an injury which he claims was due to the negligence of the companies mentioned.   After sustaining this injury, he presented a claim to the industrial insurance commission.   This claim was rejected by the commission for the reason that it had no jurisdiction over the navigation companies mentioned.   The navigation companies

had never paid any premiums to the industrial insurance commission, and no demand had been made upon the companies for premiums under the compensation act.

Thereafter Jarvis instituted an action at common law in the superior court for King county, claiming damages by reason of the injury. This action was afterwards removed to the Federal court upon the ground of diverse citizenship. The United States District Court for the state of Washington, western division, sitting at Seattle, granted a motion for judgment in favor of the defendants, the corporations above mentioned. The reason for entering this judgment was because no demand had been made upon the navigation companies by the industrial insurance commission for the state of Washington for the percentage of their pay rolls, as specified in the industrial act. As already stated, the present proceeding was instituted to compel the industrial insurance commission to make a demand for such premiums.

The case presents the question whether a seaman employed upon a boat operating upon Puget Sound and engaged in intrastate commerce is covered by the provisions of the industrial insurance or workmen's compensation act. If such employees are covered by the act, the writ in this case will be granted; if they are not, it will be denied.

The first section of the act, which is in a sense a preamble, after stating that the common law system covering the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions; that in practice it proves to be economically unwise and unfair; that its administration has produced the result that little of the cost to the employer has reached the workman; that the remedy of the workman has been uncertain, slow and inadequate; that injuries in such work have become frequent and inevitable; that the welfare of the state depends upon its industries, and upon the welfare of its wageworker; provides, that all phases of the common law system are withdrawn from private controversy, and sure and certain

"relief for workmen injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided."

It should be noted that in this section of the act it is provided that the method of compensation therein provided for shall be to the exclusion of every other remedy, and that all civil actions and civil causes of action for personal injuries, and all jurisdiction of the courts of the state over such causes, are abolished.

Section 4 of the act contains a schedule in accordance with which the employer must pay the percentage of his pay roll there set out. In this schedule, under the head of "Operation," will be found: "Steamboats, tugs, ferries, .030." In the same section of the act, the industries are classified which are required to make the payments as specified in the schedule. In class 20 are found, "Steamboats, tugs, ferries."

Prior to the passage of this act, a seaman injured while employed upon a boat operating upon Puget Sound had the choice of two remedies: He could either seek relief in admiralty in the Federal court, or pursue a common law action in the state court. By article 3, § 2, of the Federal constitution, the judicial power of the United States is extended to "all cases of admiralty and maritime jurisdiction." This grant of admiralty jurisdiction by the constitution to the Federal courts was followed by the judiciary act of 1789 (U. S. Rev. Stat., § 563): ". . . saving to suitors in all cases the right of a common law remedy where the common law is competent to give it." In *The Hamilton*, 207 U. S. 398, construing this statute, it was said that it "leaves open the common law jurisdiction of the state courts over torts committed at sea." The constitution of the United States

in extending the judicial power to all cases of admiralty and maritime jurisdiction, thereby adopted the general system of maritime law which was familiar to lawyers and statesmen of the country when the constitution was adopted. In *The Lottawanna*, 21 Wall. 558, it was said:

"That we have a maritime law of our own, operative throughout the United States, cannot be doubted. The general system of maritime law which was familiar to the lawyers and statesmen of the country when the constitution was adopted, was most certainly intended and referred to when it was declared in that instrument that the judicial power of the United States shall extend 'to all cases of admiralty and maritime jurisdiction.'"

The maritime law being a part of the law of the United States, the legislature of a state has no power to modify or abrogate it. *Workman v. New York City*, 179 U. S. 552. It follows, therefore, that the legislature in passing the compensation act could not take from a workman any right which he had under the maritime law of the United States. The petitioner here still has the right to pursue his remedy in admiralty. Gathering the purposes of the act from all its provisions, we think it could not have been the legislative intent to attempt to encroach upon the admiralty jurisdiction of the Federal court. The excerpt from the first section of the act, above quoted, substitutes the provisions of the act for every other remedy, proceeding, or compensation, except as therein provided, which proviso is not here material, as it does not bear upon the question. This declaration is followed by the clause which abolishes all civil actions and civil causes of action for personal injuries, and all jurisdiction of the state courts over such causes. It seems to be the purpose of the act to give the relief therein granted where the legislature had the power to abolish every other remedy. If companies operating boats upon Puget Sound are within the act, then they may be compelled to pay the percentage of their pay rolls specified, and yet be subject to a right of action in ad-

miralty; while other persons or corporations engaged in a hazardous business not covered by admiralty law would be completely protected against the pursuit of any other remedy or proceeding. The owner of a steamboat, if he should pay the percentage of his pay roll specified, and his injured seamen should pursue their remedy in admiralty, would receive no protection from the act, and yet would be subject to its burdens. If the act were given this construction, it might well be doubted whether it would not offend against that provision of the fourteenth amendment to the constitution of the United States which provides that no state shall make or enforce any law which shall "deny to any person within its jurisdiction the equal protection of the laws."

The petitioner seeks to apply that rule of law which permits the state to legislate upon matters which are distinctly local in character, although embraced within the Federal authority, until such time as the Federal authority may be exercised by act of Congress. *Wilmington Transportation Co. v. Railroad Commission of California*, 236 U. S. 151. Relying upon this rule, it is argued that, since Congress has passed no workmen's compensation act which covers employees on board ships, the industrial insurance law applies until such time as a Federal act is passed. This position cannot be sustained; but in considering it, it will be assumed that, if the workmen's compensation act by its terms was intended to include the owners of and the employees upon vessels, the law covering such scope does not offend against the provision of the fourteenth amendment to the constitution above referred to.

By U. S. Rev. Stat., § 4283, the liability of the owner of any vessel for damages or injury which occur without the privity or knowledge of such owner, is limited to "the amount or value of the interest of such owner in such vessel and her freight then pending." By § 4289, the limited liability provided for in § 4283 is made to apply to owners of "all sea-

going vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal boats, lighters, and barges." The limited liability thus provided for by Congress applies to cases of personal injuries as well as to cases of loss of or injury to property. In *Butler v. Boston & Savannah Steamship Co.*, 130 U. S. 527, speaking upon this question it was said:

"We think that the law of limited liability applies to cases of personal injury and death as well as to cases of loss or injury to property."

In *Craig v. Continental Ins. Co.*, 141 U. S. 638, construing "privity or knowledge" as used in § 4283, it was held that, in order to make the owner of a vessel liable for negligence, "it must appear that the owner had directly participated in the negligence." There is no claim here that the owners of the vessel "Whatcom" directly participated in the alleged negligence which caused the injury to the petitioner. It will thus be seen that § 4283 of the Federal statutes limits the liability of the owner of a vessel. This limited liability becomes the extent of recovery. Beyond the liability as limited by the statute, there can be no recovery. The workmen's compensation act limits the amount for which an employer may become liable as specified in the act. The Congress of the United States having passed a law which limits or measures the extent of the liability of the owner of a vessel to a workman who has sustained an injury, the legislature would not have the power to fix another and different standard or measure. In *Sinnot v. Davenport*, 63 U. S. 227, it was said:

"The whole commercial marine of the country is placed by the constitution under the regulation of congress, and all laws passed by that body in the regulation of navigation and trade, whether foreign or coastwise, is therefore but the exercise of an undisputed power. When, therefore, an act of the legislature of a state prescribes a regulation of the subject repugnant to and inconsistent with the regulation of congress, the state law must give way; and this without regard

to the source of power whence the state legislature derived its enactment."

The writ will be denied.

MORRIS, C. J., FULLERTON, PARKER, and ELLIS, JJ., concur.