[No. 14558. Department One. April 22, 1918.]

EDWARD J. WALSH, *Appellant,* v. ALASKA STEAMSHIP COMPANY, *Respondent.*[1]

MASTER AND SERVANT—EMPLOYERS' LIABILITY ACT—APPLICATION. The Federal employers' liability act of June 11, 1906 (34 Stat. 232), was not unconstitutional as to the territory of Alaska, and applies to injuries to employees of a common carrier occurring in Alaska, although the carrier was engaged in interstate commerce.

STATUTES — REPEAL BY IMPLICATION — TERRITORIES — EMPLOYERS' LIABILITY ACT—APPLICATION. The Federal employers' liability act of June 11, 1906 (34 Stat. 232), relating to all common carriers, including carriers by water, and held valid as to carriers engaged in trade or commerce in the District of Columbia and the territories, was not impliedly repealed by the Federal employers' liability act of April 22, 1908 (35 Stat. 65), relating to the liability of common carriers by railroad to their employees while engaged in interstate or foreign commerce; since the prior act embraces common carriers by water while unloading in Alaska, which are not within the scope or operation of the later act.

SAME—IMPLIED REPEAL—INTENT. The intent to repeal the former law by the later act is not shown by the fact that Congress promptly passed the later act upon the President's suggestion to reenact the former law in such a way as to make it constitutional; since Congress did not reenact such law in its entirety or legislate upon the entire subject-matter thereof.

[1]Reported in 172 Pac. 269.

SAME—REPEALS BY IMPLICATION—SAVING CLAUSE—CONSTRUCTION. Section 8 of the employers' liability act of 1908 (35 Stat. 65), providing that nothing in the act shall limit the liability of carriers or affect the rights of employers under pending claims under the employers' liability act of June 11, 1906 (34 Stat. 232), does not show an intent to repeal the prior act in its entirety; since such a saving clause does not destroy any rights, and is not to be confused with a saving clause in a repealing section which destroys all things not saved.

MASTER AND SERVANT — EMPLOYERS' LIABILITY ACT — MARITIME LAW. The Federal employers' liability act of June 11, 1906 (34 Stat. 232), being a valid statute regulating the liability of common carriers other than by railroad, in the District of Columbia and the territories, modifies general prior acts of Congress and the general maritime law of the United States, in so far as it confers rights and creates liabilities in its limited field inconsistent with such general acts and laws.

Appeal from a judgment of the superior court for King county, Frater, J., entered August 13, 1917, upon granting a nonsuit, dismissing an action for personal injuries sustained by an employee engaged in unloading a vessel. Reversed.

*Robert G. Cauthorn (Walter S. Fulton,* of counsel), for appellant.

*Bogle, Graves, Merritt & Bogle,* for respondent.

WEBSTER, J.—This action was brought by appellant to recover damages from respondent on account of injuries received by him while employed as a seaman on one of respondent's vessels engaged in commerce within the territory of Alaska and between ports thereof and the state of Washington. The accident which caused the injury complained of occurred while the appellant was assisting in unloading cargo at the port of Cordova, in the territory of Alaska. The complaint pleaded in full the act of Congress approved June 11, 1906, commonly known as the employers' liability act, and alleged facts sufficient to bring the case within the provisions of the act. Upon the trial of the cause,

there was competent evidence tending to establish all
of the material allegations of the complaint with this
respect sufficient to require the submission of the cause
to the jury, assuming that the act of Congress referred
to was in force and effect in the territory of Alaska at
the time the injury was received. The trial court,
however, at the close of the plaintiff's case, sustained
the defendant's motion for nonsuit, and thereafter en-
tered judgment dismissing the action. The plaintiff
has appealed.

As we view the case, the only remaining questions to
be determined upon this appeal are whether the em-
ployers' liability act of June 11, 1906, became opera-
tive in the territory of Alaska; if so, have its pro-
visions, as affecting the facts of this case, been re-
pealed by the subsequent legislation of Congress upon
the subject.

As to the first proposition, it is not contended that
the act was unconstitutional in so far as it was made
applicable to common carriers and their employees en-
gaged in commerce in the territory of Alaska. This
subject is foreclosed by the holdings of the supreme
court of the United States to the effect that the act,
though void in so far as it attempted to regulate com-
merce within the states, and common carriers and their
employees engaged in such commerce, still remained a
valid regulation of the subject as applied to the Dis-
trict of Columbia and the territories. This because of
the plenary power vested in Congress to legislate for
the territories and the dependencies, unrestricted by
the limitations placed by the constitution upon its
power to legislate for the states. *Employers' Liability
Cases,* 207 U. S. 463; *El Paso & N. E. R. Co. v. Gutier-
rez,* 215 U. S. 87; *Philadelphia, B. & W. R. Co. v. Schu-
bert,* 224 U. S. 603; *Butts v. Merchants' & Miners'
Transp. Co.,* 230 U. S. 126; *Santa Fe Cent. R. Co. v.*

*Friday,* 232 U. S. 694; *Washington, A. & Mt. V. R. v. Downey,* 236 U. S. 190. To the same effect are the decisions of the court of appeals of the District of Columbia in *Hyde v. Southern R. Co.,* 31 App. Cas. (D. C.) 466, and the district court of the United States for the eastern district of Michigan in *The Pawnee,* 205 Fed. 333.

Respondent suggests that, even though the employers' liability act of June 11, 1906, was valid as to the District of Columbia and the territories, nevertheless it merely had the force of a local statute applicable solely to carriers while engaged in commerce within the District of Columbia and the territories. While it may be assumed that the act was local in its character as so applied, it does not follow that an employer against whom the provisions of the act are sought to be enforced may not be engaged in commerce other than commerce within the territory in which the injury was received. It is sufficient if the act was in force at the place where the cause of action accrued. *Washington, A. & Mt. V. R. v. Downey; Hyde v. Southern R. Co.; El Paso & N. E. R. Co. v. Gutierrez* and *The Pawnee, supra.*

It is insisted, however, that the act in question has no application to this case for the reason that it was repealed by the subsequent legislation of Congress upon the subject embodied in what is generally known as the employers' liability act, approved April 22, 1908, the appellant having sustained the injury complained of after the taking effect of the later statute. This contention is based, first, upon the assumption that the later statute treats of the same subject-matter, and being the last expression of the legislative will, necessarily repeals the former act by implication; furthermore, that it was the manifest intention of Congress in enacting this legislation, having in view the decision of

the supreme court of the United States affecting the validity of the act of 1906, to treat of the whole subject-matter embraced in the former act, except in so far as it related to commerce within the states, and having so intended, that all provisions of the former act held to be in force in the territories are superseded by the later enactment; second, upon the assertion that the language of § 8 of the act of 1908, in saving to employees the right to prosecute "any pending proceedings or right of action" which had accrued under the act of 1906, works a repeal in its entirety of the former enactment, except as to pending proceedings and accrued causes of action which were saved by the express provisions of the later statute.

The employers' liability act of 1908 contains no words expressly repealing any provision of the former act approved June 11, 1906. If a repeal is wrought it is so because of the fact that the subsequent enactment repeals the former by implication. It is well settled that an implied repeal results from some enactment the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act. In such case, the later law prevails as the last expression of the legislative will, therefore, the former law is constructively repealed, since it cannot be supposed that the law-making power intends to enact or continue in force laws which are contradictions. Subsequent legislation repeals previous inconsistent legislation whether it expressly declares such repeal or not. In the nature of things it would be so, not only on the theory of intention, but because contradictions cannot stand together. Lewis' Sutherland, Statutory Construction (2d ed.), § 247. Hence, if the *terms* and necessary *operation* of the act of 1908 are so inconsistent with the *terms* and necessary *effect* of the act of 1906 that the two enactments cannot be har-

monized, then it may be said that the repeal operated in its entirety. On the other hand, if there were independent provisions of the former act in force and effect in the territories when the later statute was passed—legislation affecting a different class of employers or employees engaged in commerce therein —which are not embraced within the scope and *necessary operation* of the act of 1908, then, as to such employers and employees, the provisions of the former statute are not inconsistent or inharmonious with the more recent enactment; in which event the act of 1906, though limited in its operation to the class of employers and employees not included within the scope of the act of 1908, yet remains a valid and subsisting law for the territory of Alaska.

The act approved June 11, 1906, is entitled: "An Act relating to liability of common carriers in the District of Columbia and Territories and common carriers engaged in commerce between the states and between the states and foreign nations to their employees." 34 Stat. at L. 232, ch. 3073; U. S. Comp. St., 1901, Supp. 1907, p. 891. As to the scope and extent of this act, Mr. Justice White, in the *Employers' Liability Cases, supra,* said:

"From the first section it is certain that the act extends to every individual or corporation who may engage in interstate commerce as a common carrier. Its all-embracing words leave no room for any other conclusion. It may include, for example, steam railroads, telegraph lines, telephone lines, the express business, vessels of every kind, whether steam or sail, ferries, bridges, wagon lines, carriages, trolley lines, etc. Now, the rule which the statute establishes for the purpose of determining whether all the subjects to which it relates are to be controlled by its provisions is that any one who conducts such business be a 'common carrier engaged in trade or commerce in the District of Co-

lumbia, or in any territory of the United States, or between the several States,' etc.''

It is clear that this act embraced within its scope common carriers by water. Nor can it be seriously contended that it did not apply to *all* common carriers in the District of Columbia and the territories, irrespective of whether such common carriers were also engaged in commerce between the states, within the states, or between the states and the territories, or between the states or territories and foreign nations. Such is its plain import; such is the effect of the decision in the *Employers' Liability Cases, supra.* It was a regulation of the common carrier who engaged in the business, rather than a regulation of the business engaged in by such carrier.

We have seen that the constitutionality of the act was sustained in so far as it applied to the District of Columbia and the territories, the effect of which was to adjudge the statute a valid and subsisting law relating to *all* common carriers while within the territorial limits of the District of Columbia or any of the territories of the United States.

The second employers' liability act, approved April 22, 1908, is entitled: ''An act relating to the liability of common carriers by railroad to their employees in certain cases.'' (35 Stat. at L., ch. 149, p. 65; U. S. Comp. St., 1901, Supp. 1909, p. 1171.) In comparing the scope of this act with that of the former statute, Mr. Justice McReynolds, for the court in *Southern Pac. Co. v. Jensen,* 244 U. S. 205, 212, said:

''The first Federal Employers' Liability act (June 11, 1906, C. 3073, 34 Stat. 232) extended in terms to all common carriers engaged in interstate or foreign commerce, and because it embraced subjects not within the constitutional authority of Congress was declared invalid. The Employers' Liability cases, 207 U. S. 463,

January 6, 1908. The later act is carefully limited and provides that 'every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states and territories, or between the District of Columbia or any of the states and territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce. . . . Evidently the purpose was to prescribe a rule applicable where the parties are engaging in something having direct and substantial connection with railroad operations, and not with another kind of carriage recognized as separate and distinct from transportation on land and no mere adjunct thereto.''

The district court of the United States for the eastern district of Michigan, in the case, *The Pawnee, supra,* referring to the scope of the later enactment, said:

''It is clear that the act of April 22, 1908, is limited to common carriers by railroad. Such are its express terms. Where a vessel is part of a railroad system, and its crew are employes of the railroad, it would seem as if this act might include maritime injuries. *The Passaic,* (D. C.) 190 Fed. 644, 649. But the Pawnee was not a part of a railroad or railroad system, nor a common carrier. She was not engaged in the carrying trade for the general public, nor held out to carry the goods of all persons indifferently who might apply. She carried only under special arrangement, for specific cargoes, with such parties as agreements might be made. She made no profession to carry for all, and was under no obligation to take whatever goods might be tendered. She ran on no particular schedule of time, nor between any particular places or termini. She selected such cargoes as she saw fit to carry and at such prices as might be agreed upon. She had the right to refuse any freight which she wished to reject. A ship in the business in which the Pawnee

was engaged is not a common carrier in the legal sense of the term, but in fact and in law a private carrier only. . . . This conclusion would exclude her from the operation of the statute of 1906, if for any reason the provisions of that law could be otherwise held to be in force under the circumstances of this case, and no recovery can be had thereunder.''

From these observations, as well as from a consideration of the subject-matter of the two acts in question, it is apparent that the scope of the prior enactment was far more comprehensive than, and included in its terms classes of carriers not embraced within or sought to be regulated by, the subsequent enactment. Much of the subject-matter dealt with in the former, though significantly omitted from the latter, was a lawful exercise of the powers vested in Congress by the constitution. Nor can it be gainsaid that Congress possessed the power, had it seen fit to exercise it, to extend the provisions of the act of 1908 to *all* classes of common carriers in the District of Columbia and the territories, and to all such carriers while engaging in commerce between the states, or between the states and foreign nations, or between the states and the District of Columbia or the territories, or between the District of Columbia or the territories and foreign nations; yet we are urged to hold that Congress, by expressly limiting the application of the later statute to common carriers *by railroad,* intended to repeal by implication the substantive provisions of its prior valid enactment, in so far as they applied to common carriers other than by railroad.

Moreover, it is insisted that we must so hold because of the circumstances which prefaced the enactment of the more recent legislation; that is to say, that, when the supreme court, in the *Employers' Liability Cases,* held the act of 1906 unconstitutional, the President

forthwith addressed Congress with this respect as follows:

"As regards the Employer's Liability law, I advocate its immediate re-enactment, limiting its scope so that it shall apply only to the class of cases as to which the court says it can constitutionally apply, but strengthening its provisions within this scope." (Cong. Record, 60th Congress, First Session, p. 1347.)

And that Congress having thereupon passed the act with unusual promptness, it must be assumed that, in so doing, the intention was to adopt the suggestion of the President by reenacting the statute of 1906, making it apply only to the class of cases "as to which the court says it can constitutionally apply."

Assuming that Congress enacted the legislation because of the President's suggestion, the fact yet remains that it *did not* reenact the former statute; neither did it make the act of 1908 apply to the class of cases which the supreme court, in the *Employers' Liability Cases,* says it can constitutionally apply. On the contrary, it passed an act which only *professed* to apply to common carriers *by railroad;* whereas the act which it is said they intended to repeal *in its entirety* applied to *all* common carriers regardless of the character of the commerce in which such carriers were engaged or the means by which the business was carried on. If Congress had intended, by the later enactment, to adopt the views of the President and legislate upon the *entire* subject-matter embraced in the former act, so far as it had the power as defined in the *Employers' Liability Cases,* the purpose could have been easily accomplished simply by making the act apply to *all* common carriers, with the limitation which was carefully written into the act, *"while engaging in commerce between,"* etc. It was this limitation that relieved the act of 1908 of the objectionable feature of

attempted commerce regulation *within the states* which was fatal to the act of 1906, not the fact that the later enactment was restricted in its application to common carriers *by railroad.*

The further contention of respondent's counsel that the language of § 8 of the act of 1908 clearly shows the intention of Congress to repeal in its entirety the act of June 11, 1906, is without merit. The language of the section is:

"That nothing in this act shall be held to limit the duty or liability of common carriers or to impair the rights of their employees under any other act or acts of Congress, or to affect the prosecution of any pending proceedings or right of action under the act of Congress entitled 'An act relating to liability of common carriers in the District of Columbia and territories, and to common carriers engaged in commerce between the states and foreign nations to their employees,' approved June eleventh nineteen hundred and six." 35 Stat. 66; U. S. Comp. St. 1901, Supp. 1909, p. 1173.

In support of their position, counsel for respondent say:

"It will be noted that this section expressly provides that the act of 1908 shall not be held to limit the duty or liability of common carriers or to impair the rights of their employees under any other act or acts of Congress *or to affect* the prosecution of any *pending* claims arising under the act of 1906. By thus limiting the rights of employees to prosecute *pending* claims under the act of 1906, Congress has clearly indicated its intention of prohibiting the prosecution of any *future* claims under this act, and in effect has expressly repealed the act of 1906. The rights of employers under '*any other act* of Congress, such as the Safety Appliance act, are not in anywise affected."

It seems to us that the argument of counsel for appellant in reply to this contention is so forceful and

convincing that we have presumed to adopt it as a sufficient answer to the theory advanced by respondent's counsel:

"This section is not a repealing section and contains no words of repeal. On the contrary, it expressly sets out that the act of 1908 shall not be given the construction respondent is trying to put upon it. Respondent ignores the first part of the section which is, 'That nothing in this act shall be held to limit the duty or liability of common carriers or impair the rights of their employees under any other act or acts of Congress.' Respondent bases its whole argument upon the latter part of the section which is, 'That nothing in this act shall be held . . . to affect the prosecution of any pending proceedings or right of action under the act of . . . 1906.' Because the section enumerates certain things that are not to be affected, respondent inferred that all things not enumerated were intended to be affected. This at most is only an inference, and laws are not repealed by inferences. But it is not the correct inference. Enumeration is made to save the enumerated things, not to destroy the things not enumerated. Only things in danger of destruction without enumeration are included in the things enumerated. . . . Respondent's error consists in confusing a saving clause in a saving or construction section, with a repealing section containing a saving clause. In both cases, the saving clause saves, it never destroys. But where there is an express repealing section, all things not enumerated in the saving clause are destroyed by the express provisions of the repealing portion of the section or by those parts of the later act which are in irreconcilable conflict with the earlier act. Hence, in such acts, the saving clause saves only what it embraces, and all not embraced are destroyed; but such destruction is wrought, not by not being included in the saving clause, but by virtue of the destructive force of the repealing portion of the act. The act of 1908 supplanted or repealed so much of the act of 1906 as pertained to common carriers by railroad. There was, therefore, danger of some court holding that the

pending proceedings or rights of action against rail-
roads, based on the act of 1906, and good in the terri-
tories and the District of Columbia, were destroyed by
the repeal of that part of the act of 1906 upon which
they were based. To save these cases against rail-
roads, this saving clause was placed in the act. And
that is all that clause does. It makes it certain that the
pending cases and rights of action against railroads
are not affected. But this saving clause of this rail-
road law, no more affected laws pertaining to ships
(not a part of a railroad system) than it did laws re-
lating to the tariff or the army."

When we pause to consider that repeals by implica-
tion are not favored, that it is the duty of courts to so
construe, if possible, two acts in seeming conflict that
both shall be operative, which duty is performed by
permitting each to stand, where they confer different
powers to be exercised for different purposes, or where
the earlier enactment may perform some office or func-
tion not controlled by the latter, though both treat in a
general way of the same subject-matter, we are con-
strained to hold that the employers' liability act of
April 22, 1908, did not repeal the provisions of the act
of June 11, 1906, in so far as the former applied to
common carriers by water, and that the provisions of
the earlier statute in that respect were in force and
effect in the territory of Alaska on May 16, 1916, the
date appellant sustained the injury upon which the
right of action is based.

It is lastly contended by respondent's counsel that
the act of 1906 does not apply to the facts of this case
because of the provisions of the admiralty laws in
force and effect at the time and place of the injury.
The decisions of this court in *State ex .rel Jarvis v.
Daggett,* 87 Wash. 253, 151 Pac. 648, L. R. A. 1916A
446, and *Shaughnessy v. Northland Steamship Co.,* 94
Wash. 325, 162 Pac. 546, are cited in support of this

contention. We held in those cases that the provisions of the workmen's compensation laws of the state of Washington do not apply to employers and their employees engaged in maritime service upon the waters of Puget Sound. We are not concerned in this case with the conflict of national and state laws, nor with the construction or application of a state statute. The act of 1906 is a Federal, not a state statute; hence the authorities cited are not in point.

With reference to the doubt expressed by counsel for respondent as to the power of Congress, by the act of 1906, treated as a local statute, to abrogate or modify the general maritime law of the United States so as to confer upon employees of common carriers while in the territory of Alaska rights of action unknown to the admiralty or maritime law, it is sufficient to say that the act of June 11, 1906, though restricted in its operation by the decision in the *Employers' Liability Cases* to the District of Columbia and the territories, is, nevertheless, a valid statute regulating the liability of common carriers, *other than by railroad,* to their employees in such territory. If it confers rights and creates liabilities within the limited field of its operations which were not recognized by the admiralty or maritime laws, or the prior acts of Congress relating thereto, such general laws and prior acts are repealed or modified to the extent of the subject-matter lawfully embodied in this act.

Being of the opinion that the employers' liability act of June 11, 1906, applies to the facts of this case, the judgment is reversed, and the cause remanded for a new trial not inconsistent with the views herein expressed.

Ellis, C. J., Fullerton, Main, and Parker, JJ., concur.