**Amy M. EMERY and David Emery, Plaintiffs**

v.

**WILDWOOD MANAGEMENT, INC., Defendant**

**No. CIV. 02–CV–33–B–K.**

United States District Court, D. Maine.

Nov. 5, 2002.

**118**

Barry K. Mills, Hale & Hamlin, Ellsworth, for Amy M Emery, David Emery plaintiffs.

Mark V Franco, Thompson & Bowie, Portland, for Wildwood Management Inc, dba Wildwood Stables, dba Kentucky Carriage & Livery Inc, defendant.

### MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT[1]

KRAVCHUK, United States Magistrate Judge.

On September 7, 1999, Amy Emery sustained personal injuries while participating in equine activities sponsored by Wildwood Management, Inc. She has filed suit against Wildwood for negligence. Her husband, David Emery, has sued Wildwood for loss of consortium. Wildwood now moves for summary judgment against the Emerys' claims. Wildwood contends that Amy Emery's injury arose from a risk inherent to equine activities and, therefore, is subject to summary judgment pursuant to P.L.1991, ch. 779, § 41. Wildwood also contends that the Emerys cannot generate a genuine issue of fact that Wildwood breached any duty of care owed to them. I **DENY** the motion, but narrow the breadth of the Emerys' negligence claim.

### Summary Judgment Standard

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The moving party has the burden of demonstrating that there are no genuine issues of material fact for trial. *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir.2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has met its burden, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted).

### Summary Judgment Facts

Wildwood Stables is a privately owned National Park concession located in Acadia National Park. On September 7, 1999, David and Amy Emery and their two minor children visited Acadia and purchased a horse-drawn carriage ride from Wildwood. The Emerys are residents of New Jersey.

Either before or during the ride, the driver of the carriage told the Emerys

---

**1.** Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

they could stand when the carriage was at rest. According to the driver, it is safe for a passenger to stand in the carriage so long as it is at rest.

Somewhere along the carriage trail, the driver stopped the horses and carriage in front of a gate. David Emery and the Emerys' oldest child, Cooper, stepped down from the carriage to go and open the gate. Before doing so, Mr. Emery handed a video camera to Ms. Emery and Ms. Emery changed her position in the carriage. Ms. Emery then began to operate the video camera as Mr. Emery and Cooper went to open the gate. After the gate was opened, the driver asked the horses to "step up"[2] and the carriage jolted forward. Ms. Emery, who was not holding anything other than the camera, "flipped" out of the back of the carriage and was injured.

Because the carriage will move and shift when someone stands, the driver is able to tell when a passenger stands in the carriage. Wildwood contends that Ms. Emery was standing when she fell. Wildwood also admits that the driver knew Ms. Emery was videotaping at the time of the accident. Ms. Emery will testify at trial that she was seated when the accident occurred. According to Ms. Emery, the horses bolted forward and the driver did not have the reins in his hands. Ms. Emery maintains that the driver did not notify or warn her that the carriage would move forward when it did. Ms. Emery acknowledges that she knew, as a matter of common sense, that the horses might independently bolt forward at any time and carry the carriage with them, regardless of the driver's instruction and regardless of the driver's application of the brake.

**Discussion**

Amy Emery's negligence claim alleges that Wildwood is liable for negligence on three theories: (1) failure to warn; (2) failure to control the horses; and (3) failure to follow the highest degree of care under the circumstances. Wildwood's motion for summary judgment is premised on an old version of Maine's Equine Activities Act, which purports to create a "rebuttable presumption that the conduct of [an] equine activity sponsor or equine professional [is] not negligent" when such sponsor or professional adheres to the standard of care applicable to the profession. Wildwood also argues that the Emerys cannot create a genuine issue of fact that Wildwood breached any duty owed to them. The Emerys respond that Wildwood is a common carrier owing a heightened duty of care to its passengers and contend that the summary judgment record could support verdicts under a host of negligence theories, even in the absence of a heightened standard of care.

### 1. P.L.1991, ch. 779, § 41 does not provide any assistance to Wildwood.

The statutory provisions that Wildwood invokes in its defense is no longer in effect, having been repealed and superceded shortly after Amy Emery sustained her injury. The wording of these provisions can be pieced together from Chapter 779 of the Public Laws of 1991 ("An Act to Amend the Animal Welfare Laws") and chapter 650 of the Public Laws of 1993 ("An Act to Amend the Equine Licensing Laws"). Section 41 of the former Act promulgated chapter 743 of Maine Revised Statutes Title 7, which governs "Equine Activities," including "Liability for equine

**2.** Paragraph 68 of Wildwood's statement of material fact suggests that the driver asked Ms. Emery if she was ready to proceed, that she responded affirmatively and that he then asked the horses to "step up." Ms. Emery denies being asked if she was ready to proceed, but admits at paragraph 70 that the driver asked the horses to step up before they began moving.

activities." Reference can also be made to Sections 4101 through 4104–A of West Group's 1998 Supplementary Pamphlet for Maine Revised Statutes Annotated, Title 7.

Wildwood's bid for summary judgment relies on former § 4103(1), which provided as follows:

> 1. **Adherence to standards of care.** Adherence by an equine activity sponsor or an equine professional with a valid certificate issued under section 4102 to the standards of care within the profession creates a rebuttable presumption that the conduct of the equine activity sponsor or equine professional was not negligent.

■ Section 4102, in turn, entitled persons operating "a commercial riding facility with more than 2 equines" to apply for and receive certification from the Department of Agriculture, Food and Rural Resources. Such certificates expire annually. The language of § 4103(1) is clear that whatever protection it affords, it affords only to equine activity sponsors or equine professionals with a valid certificate issued under § 4102.

■ Wildwood's statement of material fact nowhere asserts that Wildwood possessed a valid certificate issued under § 4102.[3] For this reason alone, Wildwood's motion for summary judgment must be denied. "Where ... the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail 'unless the evidence that he provides on that issue is conclusive.' " *EEOC v. Union Independiente De La Autoridad,* 279 F.3d 49, 55 (1st Cir.2002) (quoting *Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 35 (1st Cir.1998)). Before Wildwood can invoke former § 4103, it must establish the existence of those facts that are prerequisite to its application.

## 2. The summary judgment record cannot support a finding that Wildwood is a common carrier.

■ "A common carrier in the modern sense includes a carrier of passengers as well as one of goods." *Chaput v. Lussier,* 132 Me. 48, 50, 165 A. 573, 574 (1933). Common carriers of passengers are "bound to exercise care and diligence for the comfort and safety of their passengers." *Id.* Maine common law imposes on common carriers of passengers a duty that has been described as "heightened."[4] Re-

---

3. A letter in the file from the Director of the Department of Agriculture reveals that the Department did not have a certification program in 1999, perhaps because new legislation was anticipated from the Legislature. I disagree with Wildwood's contention that it should not lose whatever protection § 4103 might afford just because the Department did not carry out its statutory obligations.

4. Some courts have concluded that the common carrier doctrine serves no purpose because its formulation really adds nothing to the ordinary negligence standard of reasonable care under the circumstances. *See, e.g., Lowrey v. Montgomery Kone, Inc.,* 202 Ariz. 190, 42 P.3d 621, 626 (Ariz.Ct.App.2002); *Bethel v. New York City Transit Auth.,* 92 N.Y.2d 348, 681 N.Y.S.2d 201, 703 N.E.2d 1214, 1215 (N.Y.1998). The *Bethel* Court describes it thusly:

> The objective, reasonable person standard in basic traditional negligence theory ... necessarily takes into account the circumstances with which the actor was actually confronted when the accident occurred, including the reasonably perceivable risk and gravity of harm to others and any special relationship of dependency between the victim and the actor.
>
> . . . .
>
> There is no empirical or policy basis why, in the case of common carriers, the reasonable care standard is not ... sufficient to permit triers of fact to take into account all of the hazardous aspects of public transportation in deciding whether due care was exercised in a particular case.

*Bethel,* 681 N.Y.S.2d 201, 703 N.E.2d at 1217.

cent caselaw restates the standard as requiring "the highest degree of care compatible with the practical operation of the machine in which the conveyance [is] undertaken." *Mastriano v. Blyer*, 2001 ME 134, ¶ 13, 779 A.2d 951, 954. The Emerys argue that because of this heightened duty Wildwood's motion for summary judgment on the issue of duty of care must fail. Wildwood argues that it is not a common carrier, but rather an "amusement,"[5] because it does not carry passengers for purposes of transportation "between any particular places or termini," quoting *The Pawnee*, 205 F. 333, 335 (E.D.Mich.1913).[6]

Although I have not found justification in the common law for categorizing horse-drawn carriage rides as "amusements," proprietors of such and similar services have often been categorized as "private carriers," who are not subject to the heightened duties and burdens imposed by law on common carriers. *See, e.g., Friedli v. Kerr*, 2001 WL 177184, 2001 Tenn.App. LEXIS 108 (Tenn.Ct.App. Feb.23, 2001) (holding that proprietor of a horse-drawn carriage touring service is not a common carrier because the tours are generally round-trips and because the proprietor is not obliged to transport all persons who want a ride); *Rathbun v. Ocean Accident and Guar. Corp.*, 219 Ill.App. 514 (1920) (holding that the provider of a private automobile and driver, like a livery stable keeper at common law, is a private carrier, not a common carrier, because the car and driver are provided under a special contract for hire and are not necessarily available to "any and all persons who apply"); *Oppenheimer v. Maryland Cas. Co.*, 70 Pa.Super. 382 (1918) (same); *Siegrist v. Arnot*, 86 Mo. 200, 205 (1885) ("Defendant was not a common carrier. He was under no obligation to carry any one ... except those for whom the carriage was engaged ....")

Whether Wildwood is a common carrier subject to a heightened burden is a question of law. *Mastriano*, 2001 ME 134, ¶ 11, 779 A.2d at 954 ("The existence of a duty is a question of law ...."). Some relevant factors are described in an 1869 Law Court opinion:

> Common carriers are bound to carry indifferently, within the usual range of their business, for a reasonable compensation, all freight offered, and all passengers who may apply. For similar equal services, they are entitled to the same compensation. All applying have an equal right to be transported, or to have their freight transported, in the order of their application. They cannot legally give undue and unjust preferences, or make unequal and extravagant charges. Having the means of transportation, they are liable to an action, if they refuse to carry freight or passengers without just ground for such refusal.

*New England Express Co. v. Maine Cent. R.R. Co.*, 57 Me. 188, 194 (1869).[7] If the

---

5. The common law does not impose a heightened burden of care on proprietors of all "amusements," *cf. Cloutier v. Oakland Park Amusement Co.*, 129 Me. 454, 459, 152 A. 628, 630 (1930) ("The proprietor of a place of amusement, in maintaining such, is bound to exercise only the degree of care that would be expected of an ordinarily careful and prudent person in his position"), though some state courts have prescribed a heightened burden on operators of mechanical amusement rides. *See, e.g., Loope v. Goodings Million Dollar Midways, Inc.*, 553 S.W.2d 573, 574 (Tenn. 1977).

6. Wildwood's reliance on *The Pawnee* is misplaced. The Pawnee was a vessel that carried freight under charter and pursuant to special contracts, not a public conveyance or amusement. *The Pawnee*, 205 F. at 333, 335.

7. Another early Law Court opinion suggests in *dicta* that a "liver[y] stable keeper may ... be a common carrier of passengers." *Minor v. Staples*, 71 Me. 316, 316 (1880).

Emerys wish for the court to treat Wildwood as a common carrier, they must establish a basis in the record for such treatment. The only facts in the summary judgment record that are material to this question reveal that Wildwood is a National Park concession. The significance of this single fact is unclear in the absence of greater elaboration.[8] Given the absence of any factual development at the summary judgment stage concerning the various indicia of common carrier status, I do not conclude for purposes of summary judgment that Wildwood is a common carrier. However, that does not automatically entitle Wildwood to summary judgment on the negligence claim.

### 3. The Emerys have generated trial-worthy issues related to the claim of negligence.

 The summary judgment record leaves many questions unanswered, including whether Ms. Emery was standing or seated; whether the driver had his hands on the reins or not; whether the horses bolted or were commanded to "step up"; whether the driver warned Ms. Emery that the carriage would be pulling forward when it did; whether the driver told the Emerys that it would be safe to stand in the carriage when it was at rest; whether such an assurance would have been reasonable given the unpredictable nature of horses; and so forth I am not persuaded that the way in which any one of these questions is answered would be dispositive of the Emerys' suit. However, I am persuaded that among the several possible answer combinations, the jury would be permitted to find negligence. For instance, the jury might reasonably conclude that Ms. Emery was standing, that the driver knew she was standing and that he breached his duty of care by having the horses "step up" before Ms. Emery could secure her perch in the carriage.

The only aspect of Wildwood's motion that I find compelling is its argument against the Emerys' failure to warn theory. If the summary judgment record establishes anything, it is that Ms. Emery understood the unpredictable nature of horses and that they might bolt or lunge. Although the Emerys deny receiving any warning to that effect, despite Wildwood's insistence to the contrary, Ms. Emery's deposition testimony reflects that such a warning would not have informed her of anything she did not already know. For that reason, I grant Wildwood limited relief on its motion by precluding the Emerys from proceeding on a negligence theory based on failure to warn of the unpredictable nature of horses. I will not, however, prevent either party from presenting evidence concerning the nature of horses, insofar as this fact might otherwise contribute to their respective theories of the case.

### Conclusion

Based on the foregoing discussion, I hereby **DENY** Wildwood's Motion for Summary Judgment.

### So Ordered.

---

**8.** I recognize that Wildwood's first exhibit contains materials related to its status as a national park concession. I refuse to review and analyze these various documents in a vacuum and without input from counsel.