■ JAMES CUNNINGHAM, Respondent, v HAROLD E. VINCENT et al., Appellants. [650 NYS2d 850] —Cardona, P. J. Appeals (1) from a judgment of the Supreme Court (Harris, J.), entered December 19, 1995 in Albany County, upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered July 11, 1995 in Albany County, which, *inter alia*, granted plaintiff's motion to set aside the verdict on the issue of plaintiff's contributory negligence.

Defendant New York State Association for Retarded Children, Inc. (hereinafter ARC) is a not-for-profit corporation which provides services for the disabled. ARC, doing business as Liberty Wheelchair (hereinafter Liberty), also provides transportation services to disabled members of the community. On June 24, 1992, plaintiff, a paraplegic since infancy due to cerebral palsy, contacted the Rensselaer County Department of Social Services to obtain transportation from his apartment to his dentist's office. Liberty was contacted to transport plaintiff. Defendant Harold E. Vincent, one of Liberty's employees, picked up plaintiff in a 1989 Dodge van which had been equipped just 13 days earlier with a new electro-hydraulic lift. When they reached their destination, Vincent wheeled plaintiff onto the unfolded lift platform. During the course of lowering the lift to the ground, however, plaintiff fell from his wheelchair and onto the ground. As a result of the fall, plaintiff sustained fractures to both his legs. Thereafter, plaintiff's right

leg was amputated above the knee because it failed to heal properly and it was determined that amputation would ease his pain.

Consequently, plaintiff commenced this personal injury action against Liberty, Vincent and defendant New Dimensions in Living, Inc., the owner of the vehicle. Following joinder of issue, plaintiff unsuccessfully moved for summary judgment on the issue of liability arguing the doctrine of res ipsa loquitur.* A jury trial was held, after which the jury exonerated Vincent and New Dimensions from liability, but found both Liberty and plaintiff liable. The jury apportioned 80% liability against plaintiff and 20% against defendant. With respect to damages, the jury calculated plaintiff's past pain and suffering at $80,000, custodial care at $19,850, modification of the wheelchair at $150, future pain and suffering at $1,000,000, future medical expenses at $400,000 and future custodial care at $500,000, for a total of $2,000,000. A judgment was entered to this effect, from which defendants filed a notice of appeal.

Following the verdict, plaintiff moved, pursuant to CPLR 4401 and 5501, to set aside that portion of the verdict which found that he was 80% responsible or, in the alternative, for a reapportionment of liability, and to set aside the award for past pain and suffering as inadequate. Plaintiff also moved for a judgment notwithstanding the verdict that Vincent and New Dimensions were negligent and proximately caused plaintiff's injuries. Along with opposing plaintiff's motion, defendants moved to set aside those portions of the jury verdict regarding future pain and suffering and future medical expenses. Supreme Court, after reviewing the evidence, granted plaintiff's motion to the extent of vacating the jury's findings on the issue of contributory negligence and apportionment of fault and concluded that Liberty was wholly liable. With respect to damages, Supreme Court held that the award for past pain and suffering was "grossly inadequate" and, unless the parties stipulated to an award of $500,000, it would set aside that part of the award and grant a new trial on this issue. Defendants also appeal from this order.

---

* Contrary to Liberty's contention, the "law of the case" doctrine (see, *Matter of Dondi v Jones*, 40 NY2d 8, 15; *Holloway v Cha Cha Laundry*, 97 AD2d 385, 386) did not bar submission of the case to the jury on the theory of res ipsa loquitur. "[L]aw of the case is limited to questions of law" (5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5011.09, at 50-103). In denying plaintiff's earlier motion, Supreme Court (Keegan, J.) did not determine that res ipsa loquitur did not apply as a matter of law. He only decided that there were questions of fact which precluded a grant of summary judgment on that theory at the pretrial stage of the case.

Initially, we agree with Supreme Court that the jury could have reasonably found that Liberty committed negligence which was the proximate cause of the accident based upon the application of the doctrine of res ipsa loquitur and the absence of a seat belt. As an evidentiary principle, res ipsa loquitur permits the trier of fact to draw an inference of negligence from the very nature of the accident (*see, Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226). However, before this principle can be applied, it must first be determined whether the facts of the accident warrant its application (*see, Weeden v Armor El. Co.*, 97 AD2d 197) by the establishment of three elements: " '(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff' " (*Ebanks v New York City Tr. Auth.*, 70 NY2d 621, 623, quoting Prosser, Torts § 39, at 218 [3d ed]; *see, Dermatossian v New York City Tr. Auth., supra*).

First, in our view the happening of this kind of accident, i.e., the propulsion of plaintiff out of his wheelchair to a point some five feet from the lift, was neither an ordinary nor a natural occurrence but rather the consequence of someone's negligence. Notably, Vincent could not explain what caused the accident. He testified that in normal operation the lift would take 15 seconds from the time it started until it reached the floor in a slow, gradual stop. He indicated that if he let go of the button during operation of the lift, it would result in a sudden stop. Vincent admitted that he released the button prior to the lift hitting the ground, that the wheelchair jerked, and that the rear wheels came up off the lift though the wheelchair stayed on the platform. He claimed that these occurred only after plaintiff's fall. Plaintiff testified that there was a "jolt" or a "jerk" that propelled him off the chair. Moreover, Vincent admitted to Susan McClintock, an emergency medical technician who responded to the scene, that "there was a problem with the lift".

Second, despite Liberty's contrary claim, Vincent's testimony demonstrated that he had "exclusive control" of the lift mechanism both before and after the accident. Third, the record contains no proof that plaintiff contributed to the happening of the accident by leaning forward in his chair. Vincent testified that plaintiff followed his instruction not to move once he pushed plaintiff onto the lift platform and, that as the lift began its descent, he observed plaintiff sitting with his back

against the chair, which Vincent described as a proper procedure. Although, at his examination before trial, plaintiff stated that at one point he was leaning "slightly" forward, it came in response to the question, "Show me the position that you were in *when the wheelchair hit the ground* again" (emphasis supplied). Plaintiff's answer does not demonstrate that he was leaning forward prior to experiencing the jolt or jerk, which he maintained set him in motion.

For the above reasons, we conclude that the facts of the accident warranted submission of the case to the jury on the theory of res ipsa loquitur. We likewise find this evidence sufficient to support Supreme Court's theory that there was a malfunction in the operation of the lift.

Liberty also argues that it owed no duty to plaintiff to supply him with a wheelchair seat belt during transportation and, therefore, could not be found negligent for failing to furnish one. We disagree. As a common carrier engaged in the transportation of disabled passengers, Liberty not only had a duty to exercise reasonable care for plaintiff's safety " 'in keeping with the dangers and risks known to the carrier or which it should reasonably have anticipated' " (*O'Leary v American Airlines*, 100 AD2d 959, 960, quoting PJI 2:161), but a duty to exercise additional care for his safety as was reasonably required for his disabilities of cerebral palsy and paraplegia (*see, O'Leary v American Airlines, supra,* at 960-961). There was proof that Liberty's own safety procedures required its "day care" clients—but not its "medical call" clients like plaintiff—to have seat belts attached when a lift was raised or lowered. Thus, the jury could have found that Liberty had a duty to provide plaintiff with a seat belt and that its failure to supply one was both negligent and a proximate cause of plaintiff's accident.

Turning to the merits of Supreme Court's grant of judgment to plaintiff, which vacated the jury's findings that plaintiff was contributorily or comparatively negligent for his injuries, we agree that " 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (*Mirand v City of New York*, 84 NY2d 44, 48-49, quoting *Cohen v Hallmark Cards*, 45 NY2d 493, 499). As noted by Supreme Court, the fact that plaintiff was not deposited at the base of the lift during its descent, but propelled some five feet beyond, gives rise to an inescapable inference of negligence against Liberty under res ipsa loquitur, which was not refuted by other evidence (*see, Weeden v Armor El. Co.*, 97 AD2d 197, 204, *supra*).

Furthermore, Liberty produced no evidence showing a duty on the part of plaintiff to furnish a seat belt during transportation. Neal Baillargeon, plaintiff's primary care physician, testified that he prescribed the seat belt or "posey" vest, which plaintiff sometimes wore, for household chores like cleaning and cooking but not for transportation. Thus, if there was a duty to supply a seat belt, it belonged to Liberty, as already noted.

We also find unpersuasive Liberty's claim that Supreme Court abused its discretion (see, CPLR 5501 [c]) in setting aside the jury's award of $80,000 for past pain and suffering as inadequate. The record reveals that following the accident, plaintiff required 24-hour care for approximately one year. He experienced pain so uncontrollable, and was requiring so much narcotic pain medication at what was becoming a dangerous level, that a surgeon, Jeffrey Loman, recommended treatment by amputation of the right leg. Loman testified that the procedure failed to alleviate plaintiff's pain. Plaintiff and numerous physicians and home care aides testified that after the amputation, he continued to suffer severe chronic stump and phantom limb pain, which could not be treated successfully with medication. Both plaintiff's neurologist and his orthopedic surgeon opined that the pain was permanent.

There was also evidence that, following the amputation, plaintiff lost his sense of independence, became more dependent on others to bathe, dress and transport him, and suffered depression, particularly at the thought that he would be forced to return to an institutionalized existence. We agree with Supreme Court's apt observation that, "[t]he accident and resultant injuries erased many of the gains [plaintiff] had theretofore made and restored the dependency he had theretofore striven to overcome". Accordingly, we find that Supreme Court did not abuse its discretion in setting aside the jury's award of $80,000 for past pain and suffering and granting a new trial unless the parties agreed to stipulate to the $500,000 sum which it deemed to be reasonable compensation.

Finally, we find that the jury's award of $1,000,000 for future pain and suffering and $400,000 for future medical expenses is amply supported by evidence of plaintiff's vastly diminished quality of life and chronic pain which will require permanent medical treatment.

Mikoll, Mercure, Crew III and Peters, JJ., concur. Ordered that the judgment and order are affirmed, with costs.