■ 220-52 Associates et al., Respondents, v Jerry Edelman, Appellant. [676 NYS2d 566] —Order, Supreme Court, New York County (Stuart Cohen, J.), entered October 29, 1997, which, *inter alia,* after a non-jury trial, determined that defendant and plaintiff Edward Edelman were equal partners in plaintiff 220-52 Associates, affirmed, without costs.

The evidence at trial supports the court's conclusion that the parties never reached a meeting of the minds on the allocation of partnership assets. Inasmuch as this conclusion rests on the court's evaluation of the credibility of the witnesses and of the weight to be accorded to the admissible evidence, we will not disturb its findings (*see, Jose R. v Blanche M.*, 220 AD2d 222).

Defendant argues that the trial court erred in not relying on certain documentary and other evidence supporting his testimony that he and his father, plaintiff Edward Edelman, had orally agreed that defendant was entitled to 90% of the equity in the partnership. However, none of the cited evidence was conclusive as to the central issue, and we find nothing improper in the court's decision to reject it.

Specifically, the evidence included proof of distribution to defendant over a period of 13 years of 90% of the income and refinancing proceeds from the partnership, entries on financial statements and tax returns reflecting the 90/10 split and some evidence that defendant had made a payment to his father in the amount of $90,000 which, he testified, was meant to compensate his father for 80% of his father's 50% share, leaving defendant, who already owned 50%, with a 90% share of the total partnership.

However, division of income along certain lines does not establish conclusively that the equity in the partnership is divided in the same proportion (*see, Christal v Petry*, 275 App Div 550, 557, *affd* 301 NY 562). Here, plaintiff father testified that he agreed to his son receiving a 90% share of the income

in order to enhance his son's income. Thus, while this circumstantial evidence may indicate that defendant may have trusted that his father would acknowledge his ownership of 90% of the business, as the trial court found, it did not conclusively show that his father had actually committed himself to a particular allocation of the assets. Moreover, in light of the many financial dealings between the parties, the evidence that a payment was made to plaintiff by defendant of $90,000 does not establish that the payment was in compensation for additional equity in the partnership. Furthermore, particularly in light of the family relationship involved, the failure to actually come to a specific agreement is neither as surprising nor unusual as it would have been had the parties had a purely business arrangement. Under these circumstances, the court was entitled to accept plaintiff Edward Edelman's testimony that there had been no such agreement and find that the precise rights of father and son in the partnership had remained ambiguous and unstated.

In light of its finding that there was no actual agreement to the contrary, the trial court properly held that the partnership assets would be distributed equally (Partnership Law § 40). Concur—Rosenberger, J. P., Ellerin, Williams and Saxe, JJ.

Wallach, J., dissents in a memorandum as follows: The law presumes equal equity interest among partners in the assets of a partnership, absent an agreement to the contrary (Partnership Law § 40). Nearly fifty years ago, this Court carved out a significant exception to that principle, holding that an unequal division of profits may indeed give rise to a presumption of unequal ownership congruent with the unequal distribution of earnings, and only "clear proof" can overcome the operation of that inference (*Christal v Petry*, 275 App Div 550, 557, *affd* 301 NY 562). Here, not only was defendant entitled to be viewed as the undisputed beneficiary of that latter presumption, but the evidence offered at trial clearly supported its full application. Unfortunately, the trial court either overlooked or declined to admit much of that evidence.

In general, the individual plaintiff, as manager of the partnership's books and records, bore a heavy burden to overcome a 13-year history of conduct that consistently reflected a 90%-10% allocation of equity ownership interest in defendant's favor. Specifically, there was evidence that defendant had previously been in 100% control of the partnership. In 1979, Edna and Emanuel Taub nominally retained a 50% interest in order to secure a loan they had made to facilitate the partnership's purchase of its East Side residential build-

ing. Only when that obligation was liquidated did the individual plaintiff acquire his initial interest in the partnership, upon the Taubs' conveyance of their 50% interest to him. When defendant thereafter reimbursed the individual plaintiff 80% of that payment, a 90%-10% equity allocation was established, matching defendant's allocation of profits.

Furthermore, all business dealings and financial and tax filings, over the course of the 13 years following the partnership's purchase of the building, were consistent with this allocation. Twice—in 1983 with American Savings and Loan, and in 1986 with East River Savings Bank—the mortgage on the building underwent refinancing. On both occasions, testimony established that the distribution of equity funds obtained through the refinancing was split 90%-10% in defendant's favor.

The partnership tax returns, over the course of 13 years, consistently reflected a 90%-10% division of capital between defendant and the individual plaintiff. These returns were personally signed by the individual plaintiff. According to the partnership's accounting firm, this allocation was at the behest of the individual plaintiff, who only challenged it for the first time in 1993, after the rupture of his relationship with defendant. The trial court gave no weight to these documents, concluding that the issue was foreclosed by another Judge's earlier ruling that the partnership tax returns were not dispositive for purposes of summary judgment. But that denial did not preclude re-submission of this evidence at trial where its effect could be fully considered as part of a record developed in a plenary proceeding (*Caster v Increda-Meal, Inc.*, 238 AD2d 917, 919; *Cunningham v Vincent*, 234 AD2d 648, 649, n).

Thirteen years of financial statements prepared for the partnership by the accounting firm also reflected the 90%-10% allocation of equity interest. Partnership financial records delineate the partners' individual interests (2 Bromberg & Ribstein, Partnership § 6.05 [a]). But these statements, which reflected equity interest as well as profit distribution, were also ignored by the trial court.

The individual plaintiff's personal financial statements similarly reflected only a 10% equity interest in the partnership. Such records were maintained in the regular course of business. It was error for the trial court to decline to receive them in evidence.

In the absence of a formal partnership agreement spelling out a division of equity, the court is obliged to sift the proof in order to ascertain the true intent of the parties from their acts and conduct. This the trial court failed to do. The scope of our

appellate review, in correcting these errors and reaching new findings on the evidence, is just as broad as that of the nonjury trial court (*Northern Westchester Professional Park Assocs. v Town of Bedford*, 60 NY2d 492).

I would reverse, on the law and the facts, and grant judgment to defendant.