*350
 
 OPINION OF THE COURT
 

 Levine, J.
 

 Over a century ago this Court adopted its version of the rule which came to prevail at the time in almost all State jurisdictions, imposing the duty upon common carriers of “the exercise of the
 
 utmost
 
 care,
 
 so far as human skill and foresight can go,”
 
 for the safety of their passengers in transit
 
 (Kelly v Manhattan Ry. Co.,
 
 112 NY 443, 450 [emphasis supplied]). New York, however, limited application of the rule of the carrier’s duty of extraordinary care to possible defects “in the road-bed, or machinery or in the construction of the cars, or * * * appliances such as would be likely to occasion great danger and loss of life”
 
 (id.,
 
 at 450). The duty of highest care was not extended to risks of injuries resulting from the conduct of operational employees of carriers
 
 (see, Stierle v Union Ry. Co.,
 
 156 NY 70, 73,
 
 rearg denied
 
 156 NY 684), or to the carriers’ stations, platforms or other facilities of ingress or egress
 
 (see, Lewis v Metropolitan Transp. Auth.,
 
 99 AD2d 246, 248,
 
 affd
 
 64 NY2d 670). For those situations, the customary standard of reasonable care applied.
 

 
 *351
 
 Nearly 50 years ago, this Court suggested that the rule of a common carrier’s duty of extraordinary care should be reexamined
 
 (see, McLean v Triboro Coach Corp.,
 
 302 NY 49, 51). Since
 
 McLean,
 
 two Second Circuit panels have anticipated our eventual abandonment of the rule, in favor of the more universal standard of reasonable care under all of the circumstances of the particular case
 
 (see, Stagl v Delta Airlines,
 
 52 F3d 463, 471, n 5;
 
 Plagianos v American Airlines,
 
 912 F2d 57, 59). And two terms ago, in overruling another latter 19th century special doctrine of common carrier liability for injuries to passengers (for the torts of employees, irrespective of whether they were acting within the scope of their employment), we again questioned whether exacting a carrier’s duty of exceptional care was still appropriate
 
 (see, Adams v New York City Tr. Auth.,
 
 88 NY2d 116, 121).
 

 We granted leave to appeal in this case to confront directly whether a duty of highest care should continue to be applied, as a matter of law, to common carriers and conclude that it should not. We thus realign the standard of care required of common carriers with the traditional, basic negligence standard of reasonable care under the circumstances. Under that standard, there is no stratification of degrees of care as a matter of law
 
 (see,
 
 Prosser and Keeton, Torts § 34, at 210 [5th ed]). Rather, “there are only different amounts of care, as a matter of fact”
 
 (id.,
 
 at 211).
 

 In this case, plaintiff boarded New York City Transit Authority M5 Bus No. 2209, in midtown Manhattan on June 19, 1989, and proceeded to a seat directly opposite the rear door of the bus referred to at the trial as the “wheelchair accessible seat.” The seat was wheelchair accessible only in the sense that if a wheelchair-bound passenger entered the bus at the rear door by means of the disabled person’s platform lift, the seat could be folded up and against the sidewall of the bus by means of a lever under it, thereby creating a space for the wheelchair and passenger to be strapped in against the wall. At any other time, the seat would be in its normal horizontal position, available for ordinary seating by ambulatory passengers. According to plaintiff, this seat collapsed immediately upon his sitting down and he fell to the floor of the bus, severely injuring his back. After the accident, a Transit Authority inspection revealed that the position of the seat was at a slightly elevated angle and that the seat could not be restored to its normal, completely horizontal position. In the inspector’s attempt to adjust the seat, a hinge broke and the seat collapsed.
 

 
 *352
 
 Plaintiff was unable to produce any evidence that the Transit Authority actually knew that the seat was subject to collapse. Instead, plaintiff relied upon a theory of constructive notice, evidenced by a computer printout repair record of Bus No. 2209, containing two notations that, 11 days before the accident, repairs (adjustment and alignment) were made to a “Lift Wheelchair.” Plaintiff contended that the repairs to the “Lift Wheelchair” were to the seat in question, and that a proper inspection during those repairs would have revealed the defect causing the seat to collapse 11 days later.
 

 The court charged the jury that, as a common carrier, “[t]he bus company here * * * had a duty to use the highest degree of care that human prudence and foresight can suggest in the maintenance of its vehicles and equipment for the safety of its passengers”
 
 (see,
 
 PJI3d 2:164). On the issue of constructive notice, arising out of the earlier inspection and repair, the trial court submitted to the jury the question of whether “considering
 
 the duty of care that is imposed on common carriers with respect to this equipment,
 
 a reasonable inspection would have led to the discovery of the condition and its repair” before the accident (emphasis supplied).
 

 The jury found in favor of plaintiff solely on the basis of constructive notice. The Appellate Division affirmed (242 AD2d 223), holding that the evidence of constructive notice was legally sufficient to present a jury question, and that the verdict was not against the weight of the evidence. The Court found all of the Transit Authority’s remaining arguments to be merit-less, without addressing the Authority’s objection to the court’s instruction on the elevated duty of care owed by common carriers.
 

 We agree with the Appellate Division that the Transit Authority was not entitled to a dismissal of the complaint for legal insufficiency. Thus, the dispositive issue on this appeal is the propriety of the trial court’s instruction which embodied the rule of a carrier’s duty of exceptional care.
 

 The duty of common carriers to exercise the highest degree of care, like the special rule of vicarious liability overturned in
 
 Adams v New York City Tr. Auth. (supra),
 
 was widely adopted at the advent of the age of steam railroads in 19th century America. Their primitive safety features resulted in a phenomenal growth in railroad accident injuries and with them, an explosion in personal injury litigation, significantly affecting the American tort system
 
 (see,
 
 Friedman, A History of Ameri
 
 *353
 
 can Law, at 482-484, 485, n 47 [2d ed 1985]). In this century, however, through technological advances and intense govern- . mental regulation, “public conveyances *. * * have become at least as safe as private modes of travel”
 
 (Adams v New York City Tr. Auth., supra,
 
 88 NY2d, at 121).
 

 Time has also disclosed the inconsistency of the carrier’s duty of extraordinary care with the fundamental concept of negligence in tort doctrine.
 

 “The whole theory of negligence presupposes some uniform standard of behavior. Yet the infinite variety of situations which may arise makes it impossible to fix definite rules in advance for all conceivable human conduct * * * The standard of conduct which the community demands must be an external and objective one, rather than the individual judgment, good or bad, of the particular actor * * * The courts have dealt with this very difficult problem by creating a fictional person * * * the ‘reasonable [person] of ordinary prudence’ ” (Prosser and Keeton, Torts § 32, at 173-174 [5th ed]).
 

 (See also,
 
 Restatement [Second] of Torts § 283, comment c [“(t)he chief advantage of this standard of the reasonable (person) is that it enables the triers of fact * * * to look to a community standard rather than an individual one, and at the same time to express their judgment of what that standard is in terms of the conduct of a human being”].)
 

 The objective, reasonable person standard in basic traditional negligence theory, however, necessarily takes into account the circumstances with which the actor was actually confronted when the accident occurred, including the reasonably perceivable risk and gravity of harm to others and any special relationship of dependency between the victim and the actor.
 

 “The [reasonable person] standard provides sufficient flexibility, and leeway, to permit due allowance to be made * * * for all of the particular circumstances of the case which may reasonably affect the conduct required” (Restatement [Second] of Torts § 283, comment
 
 c; see also,
 
 Prosser and Keeton,
 
 op. cit.,
 
 at 174).
 

 Recognition that the rule of a common carrier’s duty of extraordinary care conflicted with the underlying negligence theory embodied in the reasonable person standard occurred early in this century. Thus, in
 
 Union Traction Co. v Berry
 
 (121
 
 *354
 
 NE 655, 188 Ind 514 [1919]), the Indiana Supreme Court reversed a judgment in which the jury was charged on the defendant carrier’s duty of the highest care. The court noted that application of the reasonable person standard will result in a sliding scale of due care
 
 factually
 
 “commensurate to the danger involved under the circumstances of the particular case”
 
 (id.,
 
 121 NE, at 657, 188 Ind, at 522). Therefore, the court reasoned “[i]t is not practicable for a court to fix and declare as a matter of law the quantum of care or the degree of care that should be exercised under the conditions and circumstances peculiar to any special case; that duty rests with the jury to be performed under proper instructions from the court”
 
 (id.,
 
 121 NE, at 658, 188 Ind, at 522-523). Hence, instructing the jury on a quantum of highest degree of care is “misleading” and when so used, “constitute[s] an invasion of the province of the jury”
 
 (id.,
 
 121 NE, at 658, 188 Ind, at 523).
 

 Similar criticisms were leveled at the rule in a 1928 law review article
 
 (see,
 
 Green,
 
 High Care and Gross Negligence,
 
 23 111 L Rev 4). Imposition upon carriers of a duty of highest care was said to have come from a misreading of English cases
 
 (id.,
 
 at 5-7) and its adoption was attributed to the “sentimental and rhetorical value of an appeal for the utmost exercise of human care * * * as applied to the novel institution of transportation by steam”
 
 (id.,
 
 at 8). The article charged the rule with creating a confused but analytically meaningless different standard from the common negligence standard of a reasonable person
 
 under the particular circumstances,
 
 serving no function except “that in an action by a passenger against a carrier the jury is invited to scrutinize the carrier’s conduct in an endeavor to find it defective”
 
 (id.,
 
 at 10-11).
 

 Then, in
 
 McLean v Triboro Coach Corp. (supra),
 
 this Court also noted that the
 
 Kelly v Manhattan Ry. Co.
 
 rule cannot be squared with the customary negligence standard of care of the reasonably prudent person under the circumstances of the particular case.
 

 “ [I] t may well be asked whether it is ever practicable for one to use more care than one reasonably can; whether it is ever reasonable for one to use less; or whether, in sum, there can ever be more than one degree of care”
 
 (McLean v Triboro Coach Corp., supra,
 
 302 NY, at 51).
 

 In addition to its inherent inconsistency with the underlying concept of negligence in common-law tort doctrine previously
 
 *355
 
 discussed, our contemporary negligence jurisprudence has essentially undermined both of the main policy justifications for exacting of common carriers a duty of extraordinary care. The two most often expressed rationales for duty of highest care were (1) the perceived ultrahazardous nature of the instrumentalities of public rapid transit, and (2) the status of passengers and their relationship to the carrier, notably their total dependency upon the latter for safety precautions
 
 (see, Adams v New York City Tr. Auth., supra,
 
 88 NY2d, at 121-122; Green,
 
 op. cit.,
 
 at 8; 3 Harper, James and Gray, Torts § 16.14, at 508, n 6 [2d ed]).
 

 We, however, have since held that the single, reasonable person standard is sufficiently flexible by itself to permit courts and juries fully to take into account the ultrahazardous nature of a tortfeasor’s activity. Thus, we ruled in
 
 Miner v Long Is. Light. Co.
 
 (40 NY2d 372) that applying the “common-law standard of due care”
 
 (id.,
 
 at 380) was sufficient to hold a utility liable for failing to exercise an elevated level of precaution commensurate with the foreseeable extreme danger of placing high voltage lines in a residential neighborhood. There is no empirical or policy basis why, in the case of common carriers, the reasonable care standard is not similarly sufficient to permit triers of fact to take into account all of the hazardous aspects of public transportation in deciding whether due care was exercised in a particular case.
 

 Our decision in
 
 Basso v Miller
 
 (40 NY2d 233) undermines the need for the
 
 Kelly
 
 rule based upon the injured party’s status as a passenger and that person’s dependent relationship with the carrier. In
 
 Basso,
 
 we rejected an even more entrenched and venerable stratification of degrees of care (owed by owners or occupiers of land), hinging upon the status or relationship of the injured party to the defendant. We recognized in
 
 Basso
 
 that reliance upon status distinctions to fix the appropriate degree
 
 of
 
 care as a matter of law results in anomalies and semantic confusion and conflicts
 
 (id.,
 
 at 240). Thus, in
 
 Basso we
 
 abandoned the long-established three-tiered standard of care, based upon the injured party’s relationship to the landowner, in favor of the single reasonable person standard. The injured party’s status on the land, however, could be taken into account in determining “what would be reasonable care under the circumstances”
 
 (id.,
 
 at 241).
 

 As with the doctrine overturned in
 
 Basso,
 
 the imposition upon common carriers of a legal duty of extraordinary care can produce anomalous results, as when a passenger is injured by
 
 *356
 
 the negligent
 
 operation
 
 of a bus or train, rather than a defect in the “road-bed, or machinery or * * * appliances”
 
 (Kelly v Manhattan Ry. Co., supra,
 
 112 NY, at 450), or a ticketed passenger suffers an injury as a result of the defective condition of the carrier’s station platform rather than in transit. In both instances, the carrier would only be held to a duty of ordinary care (see,
 
 Stierle v Union Ry. Co.,
 
 supra;
 
 Lewis v Metropolitan Transp. Auth., supra).
 
 Moreover, as we noted in
 
 McLean v Triboro Coach Corp. (supra),
 
 the
 
 Kelly
 
 highest care standard also presents uncertainties in its application by the courts (of which the instant case may well be illustrative). Among such uncertainties for trial courts is whether the defective equipment at issue should be considered an “appliance [] such as would be likely to occasion great danger and loss of life” to passengers
 
 (Kelly v Manhattan Ry. Co., supra,
 
 at 450), thus triggering a jury instruction on the defendant’s duty of the highest care.
 

 Moreover, when charged to the jury, the rule may well skew its deliberations, so that, in effect, “the jury is invited to scrutinize the carrier’s conduct in an endeavor to find it defective” (Green,
 
 op. cit,
 
 at 11).
 

 For all of the foregoing reasons, we conclude that the rule of a common carrier’s duty of extraordinary care is no longer viable. Rather, a common carrier is subject to the same duty of care as any other potential tortfeasor — reasonable care under all of the circumstances of the particular case. Here, because the jury was specifically charged that the defendant carrier was required to exercise “the highest degree of care that human prudence and foresight can suggest” in connection with the issue of its constructive notice of the defective seat, the error cannot be deemed merely harmless.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for a new trial.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order reversed, etc.