Vacated per order filed 3/6/20.
135 Nev., Advance Opinion 32

IN THE SUPREME COURT OF THE STATE OF NEVADA

FIRST TRANSIT, INC.; AND JAY
FARRALES,
Appellants,
vs.
JACK CHERNIKOFF; AND ELAINE
CHERNIKOFF,
Respondents.

No. 70164

FILED

AUG 01 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

Appeal from an amended district court judgment on a jury verdict and orders resolving postjudgment motions in a tort action. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

*Reversed and remanded.*

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Abraham G. Smith, Las Vegas; Alverson, Taylor, Mortensen & Sanders and LeAnn Sanders, Las Vegas,
for Appellants.

Richard Harris Law Firm and Benjamin P. Cloward, Las Vegas; Marquis Aurbach Coffing and Micah S. Echols, Las Vegas; Charles Allen Law Firm and Charles H. Allen, Atlanta, Georgia,
for Respondents.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

Nevada case law imposes a heightened duty of care on a common carrier toward its passengers. In this opinion, we clarify that this

heightened duty only applies to transportation-related risks and that, for non-transportation risks, the common carrier owes a duty of reasonable care. When the carrier is aware of a passenger's disability, this duty of reasonable care includes providing safe transport that the circumstances reasonably require in light of the known disability. The district court erred by instructing the jury that a bus company owed a duty to "use the highest degree of care." Additionally, the "highest degree of care" instruction led the jury to misapply the "additional care" instruction applicable to a mentally disabled passenger who suffered a non-transportation-related injury on the bus. Therefore, we reverse and remand for a new trial.

## I.

Harvey Chernikoff, a 51-year-old intellectually disabled man, choked to death on a sandwich while riding on a paratransit bus operated by First Transit, Inc. Harvey's parents and heirs, Jack and Elaine Chernikoff, sued First Transit and First Transit's bus driver for negligence. The Chernikoffs alleged that First Transit, as a common carrier, owed the highest degree of care to monitor and assist Harvey, its passenger, while riding the bus. The Chernikoffs claimed that the bus driver was negligent in not adequately checking on Harvey and preventing him from eating, as well as for how the bus driver rendered aid once he noticed Harvey's distress and pulled to the side of the road to assist Harvey and summon medical assistance.

In closing argument, the Chernikoffs' counsel frequently conflated the two standards of care. For example, after explaining the highest degree of care, counsel stated, "when you're dealing with . . . people with impairments, . . . the standard even goes up more." Then, counsel stated that the "additional care" instruction is "even higher, it's even

higher" than the "highest duty of care" instruction. Finally, when referring to the "additional care" instruction, counsel stated, "so highest degree of care, additional care for disabled folks."

After deliberation, a divided jury (6-2) found First Transit liable for Harvey's death and awarded the Chernikoffs $15 million—$7.5 million for Harvey's pain and suffering and $7.5 million for the Chernikoffs' grief, sorrow, and loss of companionship. First Transit appeals, arguing for a new trial because, among other reasons, the jury was erroneously instructed that First Transit owed Harvey more than an ordinary duty of reasonable care under the circumstances. First Transit further argues that the Chernikoffs' counsel caused prejudice by the use of the erroneously given instruction in closing argument.

## II.

The district court instructed the jury (instruction 32) that First Transit had a heightened duty of care as a common carrier:

> At the time of the occurrence in question, the Defendant FIRST TRANSIT was a common carrier. A common carrier has a duty to its passengers to use the highest degree of care consistent with the mode of conveyance used and the practical operation of its business as a common carrier by paratransit bus. Its failure to fulfill this duty is negligence.

The district court also instructed the jury that Harvey was disabled (instruction 33), and that a common carrier must provide additional care to disabled passengers when aware of their disability (instruction 34):

> When a carrier is aware that a passenger is mentally disabled so that hazards of travel are increased as to him, it is the duty of the carrier to provide that additional care which the

circumstances reasonably require. The failure of the defendant to fulfill this duty is negligence.

First Transit argues that these instructions, along with the Chernikoffs' closing argument, allowed the jury to find First Transit liable under a heightened standard of care that does not apply to perils unrelated to the hazards of transport. The Chernikoffs respond that First Transit waived any objection to the instructions by proposing them and that the instructions correctly state the law. We "review[ ] a district court's decision to give a jury instruction for an abuse of discretion or judicial error." *FGA, Inc. v. Giglio*, 128 Nev. 271, 280, 278 P.3d 490, 496 (2012). But even if a jury instruction is incorrect, "reversal of the district court's judgment is not warranted unless the error was prejudicial." *Cook v. Sunrise Hosp. & Med. Ctr., LLC*, 124 Nev. 997, 1005, 194 P.3d 1214, 1219 (2008).

## A.

We reject the Chernikoffs' argument that First Transit waived any objection to jury instruction 32 on appeal by proposing the instruction at trial. First Transit's initial position at trial was that no common carrier instruction should be given because the heightened standard only applies to transportation risks, not non-transportation risks such as the failure to recognize or prevent a medical event. But the district court rejected First Transit's argument and determined that it would instruct the jury that a common carrier is subject to a heightened duty of care. So, in the alternative, First Transit objected to the wording of the Chernikoffs' proposed instruction, which stated that a common carrier is negligent if it fails to "exercise the highest practicable degree of care that the human judgment and foresight are capable of, to make its passenger's journey safe." First Transit then proposed an alternative—the Nevada pattern jury instruction on the duty of a common carrier to its passenger—which the

district court accepted and gave as jury instruction 32. *See* Nevada Jury Instructions—Civil, 2011 Edition at 4.47.

Under these circumstances, First Transit preserved its objection to instructing the jury that a common carrier owes a heightened duty of care for perils unrelated to the hazards of transport. *See Weaver Bros., Ltd. v. Misskelley*, 98 Nev. 232, 234, 645 P.2d 438, 439 (1982) (holding that submission of an alternative juror affidavit while objecting to consideration of the affidavits did not waive the party's objection); *see also United States v. Squires*, 440 F.2d 859, 862 (2d Cir. 1971) (holding that an objection was preserved when the party "clearly objected to any instruction on the issue" but then "submitted a less stringent instruction on the issue" that the court accepted); *Huebotter v. Follet*, 167 P.2d 193, 196 (Cal. 1946) (holding that a party is not estopped from objecting to a jury instruction that the party proposed be given "if, and only if, other instructions proposed" were not given); *State v. Vander Houwen*, 177 P.3d 93, 99 (Wash. 2008) ("[A]n appellate court may review instructions that a petitioner proposed if the petitioner originally requested correct instructions that were rejected by the court."). A party does not waive an objection to a jury instruction by seeking the best alternative outcome after the district court overrules its primary threshold objection. *See Mary M. v. City of L.A.*, 814 P.2d 1341, 1346 (Cal. 1991) ("An attorney who submits to the authority of an erroneous, adverse ruling after making appropriate objections or motions, does not waive the error in the ruling by proceeding in accordance therewith and endeavoring to make the best of a bad situation for which he was not responsible.") (quoting *People v. Calio*, 724 P.2d 1162, 1164 (Cal. 1986)). We also reject the Chernikoffs' argument that First Transit waived its objection to jury instruction 34 by proposing the instruction, both because First

Transit did not propose the instruction and because it properly objected when the Chernikoffs proposed it. *See* NRCP 51(c) (stating the requirements for objecting to jury instructions). Accordingly, we will consider whether the district court abused its discretion by instructing the jury that First Transit had heightened duties of care in this case.

B.

First Transit does not dispute that it is a common carrier or that Harvey was its passenger when he died. First Transit also does not contest that instructions 32 and 34 correctly state the duties Nevada case law imposes on a common carrier for transportation-related risks to its passengers. But First Transit contends that those duties are irrelevant and instructing on them misled the jury because Harvey died from choking, which is not a risk inherent to transportation that First Transit had a duty to exercise extraordinary care to prevent. We agree in part.

1.

Long-standing Nevada case law holds that a common carrier owes a heightened duty of care to its passengers, at least for transportation-related risks. *See Sherman v. S. Pac. Co.*, 33 Nev. 385, 405, 111 P. 416, 424 (1910) ("The rule . . . requires that a common carrier of passengers shall exercise more than ordinary care. It requires the exercise of extraordinary care, the exercise of the utmost skill, diligence, and human foresight.") (quoting *Spellman v. Lincoln Rapid Transit Co.*, 55 N.W. 270, 271 (Neb. 1893)); *Murphy v. S. Pac. Co.*, 31 Nev. 120, 125, 101 P. 322, 325 (1909) ("[A] railroad acting in the capacity of a common carrier of passengers is bound to use the utmost care and diligence for the safety of the passengers, and is liable for any injury to a passenger occasioned by the slightest negligence against which human prudence and foresight should have guarded."); *see*

*also Forrester v. S. Pac. Co.*, 36 Nev. 247, 276, 134 P. 753, 761 (1913) (similar). Cases following this traditional rule reason that a common carrier must exercise extraordinary care because "the passenger places himself or herself in the care of that common carrier and is unable to use his or her own faculties to prevent or avoid accidents and so is forced to rely on the common carrier to ensure that accidents are avoided." 14 Am. Jur. 2d *Carriers* § 814 (2009).

We agree that a common carrier's heightened duty does not extend to protect passengers from non-transportation risks, such as those associated with eating. *See Rodriguez v. New Orleans Pub. Serv., Inc.*, 400 So. 2d 884, 887 (La. 1981) (rejecting a heightened standard for common carriers to prevent battery because "[i]t is obvious . . . that injury resulting from a battery is totally unconnected with the hazards generally associated with transportation"). A common carrier is not a general guarantor of its passengers' safety. *See, e.g., Lopez v. S. Cal. Rapid Transit Dist.*, 710 P.2d 907, 909 (Cal. 1985) ("Common carriers are not, however, insurers of their passengers' safety."); *Sanchez v. Indep. Bus Co.*, 817 A.2d 318, 323 (N.J. Super. Ct. App. Div. 2003) (rejecting a duty that would make a common carrier "a guarantor of its passenger's safety regardless of scienter or notice"); *White v. Metro. Gov't of Nashville & Davidson Cty.*, 860 S.W.2d 49, 52 (Tenn. Ct. App. 1993) ("[C]ommon carriers are not insurers of their passengers' safety. Passengers must still exercise ordinary care for their own safety."). The only connection between First Transit and Harvey choking is that Harvey choked while riding on First Transit's bus. To extend First Transit's extraordinary duty to this situation would "go beyond the reason for the [common carrier] rule and treat public carriers specially for all purposes rather than for those risks associated with the conducting

SUPREME COURT
OF
NEVADA

(O) 1947A

7

of its business." *Rodriguez*, 400 So. 2d at 887. A common carrier's extraordinary duty of care to a passenger therefore does not extend to risks not associated with transportation, such as what occurred in this case, that the passenger would face "in the same way and to the same extent" outside of the transportation. *Pac. S.S. Co. v. Holt*, 77 F.2d 192, 196 (9th Cir. 1935). Because the Chernikoffs did not allege that First Transit was negligent regarding a risk generally associated with transportation, instruction 32 was improper as applied and misled the jury that First Transit had a greater duty than required under the law.

2.

The prejudice caused by giving instruction 32 affected the jury's ability to correctly apply the duty of reasonable care in instruction 34. The district court instructed the jury, in instruction 34, that a common carrier must provide the "additional care which the circumstances reasonably require" for a mentally disabled individual. *See* Nevada Jury Instructions—Civil, 2011 Edition at 4.50 (citing *Am. President Lines, Ltd. v. Lundstrom*, 323 F.2d 817, 818 (9th Cir. 1963)). Again, First Transit does not contest that a common carrier who is aware of a passenger's disability must exercise reasonable care as to that passenger's safe transport in light of the known disability. So, a carrier who transports a passenger who cannot walk or stand unaided, for example, owes a duty to assist the passenger in boarding and disembarking. *See Cunningham v. Vincent*, 650 N.Y.S.2d 850, 853 (App. Div. 1996) (acknowledging this duty while noting that a carrier "not only had a duty to exercise reasonable care for plaintiff's safety in keeping with the dangers and risks known to the carrier or which it should reasonably have anticipated, but a duty to exercise additional care for his safety as was reasonably required for his disabilities" (internal quotation

marks and citations omitted)); *Vaughn v. Nw. Airlines, Inc.*, 558 N.W.2d 736, 744 & n.8 (Minn. 1997) (recognizing a reasonable care standard for assisting a disabled passenger with his or her luggage, "not the heightened standard of care for common carriers imposed in other circumstances"). While instructions 32 and 34 correctly state the law, coupled together they incorrectly implied to the jury in this case that First Transit and its bus driver were required to do more than transport Harvey safely from one location to another, such as to proactively monitor Harvey to protect him from risks, like choking, that are not related to the transportation. This is not to say that instructions 32 and 34 could never be given together, simply that instruction 32 does not apply to a common carrier case not involving transportation risks.

First Transit works with the Regional Transportation Commission to include and accommodate disabled individuals by providing alternative busing services to them. *See Boose v. Tri-Cty. Metro. Transp. Dist. of Or.*, 587 F.3d 997, 1005 (9th Cir. 2009) ("[C]omplementary paratransit is not intended to be a comprehensive system of transportation for individuals with disabilities [but] is intended simply to provide to individuals with disabilities the same mass transportation service opportunities everyone else gets . . . .") (quoting ADA Paratransit Eligibility—Standards, 56 Fed. Reg. 45,601 (Sept. 6, 1991)); Laura Rothstein & Julia Irzyk, *Disabilities and the Law* § 8:12 (4th ed. 2018) ("[P]aratransit service is intended for individuals with disabilities who are unable to use fixed-route transportation systems . . . ."). But, as already discussed, First Transit's heightened duties as a common carrier only apply to risks related to transportation, not to prevent medical events. Accordingly, jury instruction 34, coupled with instruction 32, misled the

jury by implying that First Transit's duty to provide "additional care" to Harvey imposed a higher standard of care than the facts of this case support. "Additional care" in instruction 34 refers to the added responsibilities the duty of reasonable care encompasses when dealing with passengers with known disabilities; it does not impose a heightened standard of care for non-transportation-related risks. The Chernikoffs' closing argument further exacerbated this implication by conflating the two instructions.

3.

The special relationship between First Transit, as a common carrier, and Harvey, as First Transit's passenger, did create a duty for First Transit to aid Harvey when he suffered a medical event on the bus. But the duty to exercise reasonable care to render aid was not extraordinary or heightened as suggested by the Chernikoffs' closing argument and the combination of instructions 32 and 34.

"In Nevada, as under the common law, strangers are generally under no duty to aid those in peril." *Lee v. GNLV Corp.*, 117 Nev. 291, 295, 22 P.3d 209, 212 (2001). "But 'where a special relationship exists between the parties,' the law may impose an affirmative duty." *Baiguen v. Harrah's Las Vegas, LLC*, 134 Nev., Adv. Op. 71, 426 P.3d 586, 592 (2018) (quoting *Lee*, 117 Nev. at 295, 22 P.3d at 212). One such special relationship is between a common carrier and its passenger. *See* Restatement (Second) of Torts § 314A(1)(b) (2019) ("A common carrier is under a duty to its passengers to take reasonable action . . . to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others."); Restatement (Third) of Torts § 40(b)(1) (2019). As a result of the relationship, the law applies a duty of reasonable

SUPREME COURT
OF
NEVADA

(O) 1947A

care on a common carrier to aid a passenger where no duty to aid would otherwise exist. *See* Restatement (Second) of Torts § 314A(1)(b).

A common carrier's duty to render aid is not extraordinary, however. *See id.* at cmt. e ("The duty in each case is only one to exercise reasonable care under the circumstances."). A common carrier "is not required to take any action beyond that which is reasonable under the circumstances." *Id.* at cmt. f. "In the case of an ill or injured person, [the common carrier] will seldom be required to do more than give such first aid as [it] reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained." *Id.*; *see also Lee*, 117 Nev. at 298, 22 P.3d at 214 (restaurant did not breach duty to choking patron by "failing to perform the Heimlich maneuver" where the restaurant examined and monitored the patron and summoned medical assistance). Instruction 32 in concert with 34 incorrectly implied to the jury that First Transit had to do something more than that which was reasonable under the circumstances in summoning and rendering emergency medical aid to Harvey.

## C.

First Transit's liability for Harvey's death presented a close issue. The jury verdict was not unanimous; two of the eight jurors would have given a different result. And the heightened duties in instruction 32, which led to a misunderstanding of instruction 34, misled the jury on issues central to First Transit's liability, including whether First Transit had to proactively monitor Harvey to protect him from choking and whether First Transit was negligent for not providing more effective medical aid to Harvey

than it did. If instructed only that First Transit had to act reasonably under the circumstances as stated in instruction 34, as opposed to including the "highest degree of care" instruction, the jury may have found First Transit not liable for Harvey's death. *See* 2 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 262 (2d ed. 2011) ("[S]ystematically instructing the jury on the duty to use the highest care seems on its face likely to sway juries in closer cases—and swaying even one juror might be enough in many instances.").[1] We therefore reverse the judgment and remand for a new trial. *See Carver v. El-Sabawi*, 121 Nev. 11, 16, 107 P.3d 1283, 1286 (2005) (recognizing that reversal is appropriate where a jury instruction was "a misleading and imprecise statement of the law, and very likely confused and misled the jury").

_____, J.
Hardesty

We concur:

_____, C.J.
Gibbons

_____, J.
Parraguirre

---

[1]We do not reach the other issues First Transit presses us to resolve because they do not appear likely to recur in the form in which they are presented on this appeal or were not adequately raised and resolved in district court.

PICKERING, J., concurring:

I concur with the majority. I write separately to emphasize that this appeal did not present, and we do not today decide, whether Nevada should retain the common-carrier heightened-duty rule adopted in the late nineteenth and early twentieth century railroad cases.

Historically, the common-carrier heightened-duty rule originated in the hazards peculiar to steam railroad transport. *See Bethel v. N.Y.C. Transit Auth.*, 703 N.E.2d 1214, 1216 (N.Y. 1998). Modern technology and government safety statutes and regulations have diminished much of the rule's original justification. *Id.* At the same time, the heightened-duty rule risks confusion and invites misapplication because it dictates different levels of care depending on the liability-producing event and the precise circumstances involved. *See id.* at 1218 (noting the "anomalous results" and "uncertainties" the common-carrier heightened-duty rule produces given that, at times, the rule requires "the highest degree of care," whereas at others, it requires simply "reasonable care"). As this case illustrates, correctly stating and applying these distinctions can lead to jury confusion and reversible error. For these reasons, and consistent with parallel developments in other areas of tort law, such as premises liability, some courts have replaced the common-carrier heightened-duty rule with a standard negligence rule, under which "a common carrier is subject to the same duty of care as any other potential tortfeasor—reasonable care under all of the circumstances of the particular case." *Id.* at 1218; *see Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1108 (Ariz. 2012) ("It is difficult to see why we should impose upon the common carrier a duty to do more than a reasonable carrier would do under the facts of each particular case."); *Frederick v. City of Detroit,*

*Dep't of St. Rys.*, 121 N.W.2d 918, 923 (Mich. 1963) ("[J]ury instructions that a carrier owes its passengers high care, higher care, highest care or the like, constitute an invasion of the fact finding province of the jury."). Applying general negligence principles, "there are no categories of care, i. e., the care required is always reasonable care. What is reasonable depends upon the dangerousness of the activity involved. The greater the danger, the greater the care which must be exercised." *D. C. Transit Sys., Inc. v. Carney*, 254 A.2d 402, 403 (D.C. 1969).

A general negligence approach recognizes the relationship between a common carrier and its passenger as "special," similar to an innkeeper and guest, such that the common carrier owes its passenger a duty to aid or protect them from risks arising in the course of their relationship. But the duty itself is one of reasonable care:

> (1) A common carrier is under a duty to its passengers to take reasonable action
>
> > (a) to protect them against unreasonable risk of physical harm, and
> >
> > (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

Restatement (Second) of Torts § 314A (Am. Law Inst. 1965); *see also* Restatement (Third) of Torts § 40(b)(1) (Am. Law Inst. 2012) & *id.* cmt. d. (similarly recognizing as "special" a common carrier's relationship with its passenger but "adopting a more general duty of reasonable care").

As noted, this case does not develop the legal issues outlined above. My point is that the complexity in this area of law may merit

attention in a future case and that this is not foreclosed by the majority opinion, which I join.

_Pickering_ , J.
Pickering

STIGLICH, J., with whom CADISH and SILVER, JJ., agree, dissenting:

It is well established that common carriers owe their passengers a heightened duty of care, and this court should not unsettle this precedent idly. Because the majority's opinion both overturns the district court's appropriate instructions to the jury and reshapes the future application of this doctrine, I respectfully dissent.

It cannot be reasonably disputed that respondents did not present evidence supporting jury instructions 32 (heightened duty owed by common carriers) and 34 (heightened duty owed to patrons with known disabilities). A party is entitled to have the jury instructed on its theory of the case that is supported by the evidence, and this court reviews the district court's decision to give a proposed jury instruction for an abuse of discretion or judicial error. *Atkinson v. MGM Grand Hotel, Inc.*, 120 Nev. 639, 642, 98 P.3d 678, 680 (2004). Respondents' theory of the case was that First Transit owed Harvey Chernikoff a heightened duty of care by virtue of its operating as a common carrier with the knowledge that he was cognitively disabled and that First Transit breached this duty and caused his death when its driver failed to monitor Harvey, prevent him from eating, and render first aid after Harvey started choking. First Transit's safety manager testified that the company had policies forbidding eating and drinking on the bus and mandating that drivers visually scan the interior of the bus every five seconds. She testified that both were safety precautions and that the eating prohibition was specifically intended to prevent the risk of choking and death. She also testified that First Transit did not train its drivers in first aid. The driver testified that he knew that

eating was prohibited because of the choking risk, helped Harvey drink water on the bus even though it was prohibited, failed to check on Harvey and did not see him slump over, and did not attempt first aid. The driver knew of Harvey's disability, and First Transit knew of his disability through approving Harvey's use of its paratransit services. Respondents thus alleged and produced evidence supporting their theories that appellants operated as a common carrier, knew of Harvey's disability, and breached its duty to Harvey, causing his death.

I disagree with the majority that the instructions did not correctly state the law under the circumstances present. Jury instruction 32 gave the pattern instruction for the heightened standard of care a common carrier owes to its passengers. As the majority recognizes, this standard is well established.[1] *See, e.g., Sherman v. S. Pac. Co.*, 33 Nev. 385, 405, 111 P. 416, 424 (1910) (recognizing heightened standard of care owed to passengers by common carrier). The majority missteps, however, in limiting the scope of a common carrier's heightened duty to only transportation-related risks. This limitation is not found in this court's past consideration of the duty and conflicts with other caselaw applying the heightened standard without limitation that has held that carriers must

---

[1]As this standard is a well-established staple of our torts jurisprudence, I disagree with the concurrence's willingness to cast the standard aside so lightly. Further, its representation that the duty "is" that of reasonable care misstates the standard that we have traditionally applied. *See Johns Hopkins Hosp. v. Correia*, 921 A.2d 837, 841-43 (Md. Ct. Spec. App. 2007) (recognizing that Nevada follows a different standard for common carriers than that applied in *Bethel v. New York City Transit Authority*, 681 N.Y.S.2d 201 (1998), on which the concurrence relies, and that *Bethel*'s standard is not the majority position).

SUPREME COURT
OF
NEVADA

(O) 1947A

2

protect passengers from foreseeable assaults by third parties. For instance, *Forrester*, which the majority cites in support of the common carrier standard's longstanding basis, held that the heightened duty to provide safe transit encompassed protecting passengers against assaults by third parties, insofar as those harms were foreseeable and preventable. *See Forrester v. S. Pac. Co.*, 36 Nev. 247, 307-08, 134 P. 753, 773 (1913). This accords with the contemporaneous view of the United States Supreme Court, which *Forrester* discusses. *See N.J. Steamboat Co. v. Brockett*, 121 U.S. 637, 645-46 (1887); *Forrester*, 36 Nev. at 283-84, 306-07, 134 P. at 764, 773. The majority's recognition that common carriers are not guarantors of a passenger's safety does not support limiting the carrier's duty to transportation-related risks and distracts from the salient issue because the plaintiffs below did not argue that First Transit was strictly liable for any harm that befell Harvey on the bus, but rather that First Transit owed a heightened duty to Harvey and breached that duty. Indeed, the authorities the majority cites in this regard held that a carrier may be liable for assaults by third parties and thus *support* the relevant instructions given because they focus on whether the harm was foreseeable and preventable, not whether it was transportation-related. *See Lopez v. S. Cal. Rapid Transit Dist.*, 710 P.2d 907, 914 (Cal. 1985) (holding that carriers' heightened duty encompasses protecting passengers from foreseeable and preventable assaults by third parties); *Sanchez v. Indep. Bus Co., Inc.*, 817 A.2d 318, 322 (N.J. Super. Ct. App. Div. 2003) (concluding that the issue was "whether the wrongful act of the third person could have been reasonably anticipated"). *Lopez* further recognized that *Rodriguez v. New Orleans Public Service, Inc.*, 400 So. 2d 884 (La. 1981), which the majority cites and

SUPREME COURT
OF
NEVADA

(O) 1947A

3

which does support limiting the duty to transportation-related risks, represented a minority position contrary to the views of "[v]irtually all courts and all commentators." *Lopez*, 710 P.2d at 910. In both third-party assaults and Harvey's death here, the connection between the injured passenger and the carrier was mere ridership. Whether the risk was one that was foreseeable and preventable within the scope of the carrier's heightened duty of care was a matter for the jury to decide. This is particularly the case here where First Transit adopted policies addressing the risks confronted here—First Transit's own practices showed that it considered these risks to be related to the duty it owed its passengers. Accordingly, I would decline to introduce a new limitation to the common carrier standard of care that conflicts with our precedent and the overwhelming majority of other courts and commentators.

I disagree as well with the majority's construction of jury instruction 34. As the majority acknowledges, the instruction that First Transit owed Harvey "additional care which the circumstances reasonably require" correctly states the law.[2] Where other courts have considered the duties a common carrier owes to a passenger with a known disability, they have ruled in accord with instruction 34. *See Cunningham v. Vincent*, 650 N.Y.S.2d 850, 853 (N.Y. App. Div. 1996) (holding that paratransit provider with knowledge of the passenger's disabilities was required to provide additional care reasonably tailored to the needs presented by the

---

[2]The majority's concern that instruction 34 combined with instruction 32 to mislead the jury rests on its misconception that the common carrier standard of care was limited to "transportation-related" risks and would be alleviated by properly construing the common carrier standard.

passenger's specific disabilities); *see also Am. President Lines, Ltd. v. Lundstrom*, 323 F.2d 817, 818 (9th Cir. 1963) (recognizing heightened standard of care owed to disabled passengers where the disability is known); *Heger v. Trs. of Ind. Univ.*, 526 N.E.2d 1041, 1043 n.4 (Ind. Ct. App. 1988) (observing that common carrier with notice of passenger's disability must exercise greater degree of care for that passenger than is owed to passengers in good health). Accordingly, I disagree with the majority that First Transit owed Harvey no more than transporting him safely between two locations (which it did not do). Rather, First Transit owed Harvey the heightened standard of care that a common carrier owes its passengers as well as additional care reasonably tailored to his known disability. And again, First Transit's policies reflected this greater duty, as they recognized the risk of choking as a hazard facing its passengers and implemented policies to protect against that risk. The majority errs in pronouncing categorically that the duty owed cannot include monitoring disabled passengers to protect against choking risks, as the "additional care" a common carrier owes a particular disabled passenger will depend on what care his or her particular known disability reasonably requires. Whether the facts here presented circumstances in which First Transit breached its duty was a matter for the parties to argue and the jury to find by applying the facts to the law. The majority has improperly arrogated that determination for itself.

It is indisputable that Harvey was not transported safely. Whether First Transit's duties to Harvey included protecting him from the sequence of events that led to his death was a determination for the jury to make after evaluating the circumstances. The district court properly left this finding for the jury, instructions 32 and 34 accurately stated the relevant law, and evidence supported giving them. Therefore, the district court's exercise of its discretion should not be overturned.

Respectfully, I dissent.

_____, J.
Stiglich

We concur:

_____, J.
Cadish

_____, J.
Silver

